## Conrad Albrecht v. The State.

1. **Constitutional Law — Title of Act.** — The purpose of the constitutional requirement that no bill (except general appropriations) shall contain more than one subject, which must be expressed in its title, is to prevent surreptitious legislation and the combination of incongruous enactments. This purpose is subserved in an act which has but one general object, and that object is fairly indicated by the title.

2. **Same — "The Bell-Punch Law."** — The several provisions of the act of April 3, 1879, known as "the bell-punch law," are sufficiently indicated by its title, viz.: "An act to provide for the levy and collection of an occupation tax on the sale of spirituous, vinous, and malt liquors in quantities less than a quart, and to make an appropriation to carry the same into effect." But if any of its provisions were not indicated by the title, they only, and not the entire enactment, could be held null.

3. **Same.** — The levy by the said act of a State and also of a county tax, and its prohibition of interference by the county authorities, are provisions germane to its subject, and within the comprehensive, though specific, taxing powers conferred by the Constitution upon the Legislature. County Commissioners' Courts, except as boards of equalization, have only such taxing powers as the Legislature has conferred and may resume.

4. **Same.** — The tax imposed by the said act is a tax upon the occupation of a retailer of liquors, and not a tax on his stock in trade, like an *ad valorem* assessment. That it extracts more money from some dealers than from others does not impugn its equality and uniformity in a constitutional sense; and the automatic contrivance known as the "register" or "bell-

punch" is legitimately furnished at each dealer's expense, to count the drinks he dispenses and thus adjust the tax he must pay.

5. JUDICIAL POWER. — Courts cannot adjudge a statute unconstitutional because they deem it violative of public policy or contrary to the genius of our government; they must point with certainty to the exact constitutional provision it oppugns. If it is within constitutional limitations, but impolitic and unjust, the corrective is not in the courts, but with the people in their political capacity.

APPEAL from the Criminal District Court of Harris. Tried below before the Hon. G. COOK.

By the indictment in this case it is charged that, on October 16, 1879, in the County of Harris, the appellant, "being then and there à duly and legally licensed dealer in spirituous, vinous, and malt liquors in quantities less than a quart, then and there had permanently attached to his counter the register provided by law, marked 'Malt,' which said register had been obtained by him from the tax-collector of Harris County as provided by law, and which said register was then and there provided with a crank and bell as the law directs ; and that said Conrad Albrecht then and there did sell a drink, the same being a glass of beer, the same being malt liquor, to E. Alstatten, and that the said Conrad Albrecht then and there did, unlawfully and wilfully, on the sale of said drink, fail to turn the crank of said register marked 'Malt,' and then and there unlawfully and wilfully did fail to register said drink of beer so sold as aforesaid to E. Alstatten ; contrary to law," etc.

To this indictment the defence excepted on sundry grounds which are disclosed in the opinion of this court. The exceptions were overruled by the court below, and the defendant reserved a bill of exceptions. Waiving a jury, he was tried by the court on his plea of not guilty, convicted, and fined in the sum of $50. His motion for a new trial being overruled, he gave notice of appeal.

*Charles Stewart,* for the appellant, cited the following

constitutional provisions, statutes, and adjudicated cases : Const. of Republic of Texas, art. 4, sects. 10–12 ; Const. of State, A. D. 1845, art. 7, sect. 34 ; Const. of State, A. D. 1866, art. 4, sect. 17 ; Const. of State, A. D. 1869, art. 5, sects. 1, 20 ; Const. of State, A. D. 1876, art. 3, sects. 35, 43 ; id., art. 5, sect. 18 ; id., art. 8, sects. 1, 2, 9 ; id., art. 9, sects. 1, 2 ; id., art. 11, sects. 1, 3, 6, 7 ; An act of the Texas Congress to authorize Justices' Courts, etc., of December 20, 1836 ; Laws 1st Cong., p. 146 ; id., pp. 148, 259 ; Laws 1st Sess. 2d Cong., p. 112 ; Laws 4th Cong., p. 26 ; Laws 5th Cong., p. 102 ; Laws 6th Cong., p. 106, and subsequent laws relative to County Courts and Commissioners' Courts under the several Constitutions, up to and inclusive of the Revised Statutes ; *Stephens* v. *The State,* 4 Texas, 137 ; *Clegg* v. *The State,* 42 Texas, 605 ; *Blessing* v. *City of Galveston,* 42 Texas, 641 ; *Texas Banking & Insurance Co.* v. *The State,* 42 Texas, 640 ; *Higgins* v. *Rinker,* 47 Texas, 381 ; *George* v. *Dean,* 42 Texas, 73 ; *Galveston County* v. *Gorham,* 49 Texas, 279 ; *Brown* v. *State of Maryland,* 12 Wheat. 419 ; *Almy* v. *State of California,* 24 How. 169 ; *Crandall* v. *State of Nevada,* 6 Wall. 35 ; *The Passenger Cases,* 7 How. 283 ; *Woodruff* v. *Parham,* 8 Wall. 123 ; *Hinton* v. *Lott,* 8 Wall. 148 ; *Ward* v. *Maryland,* 12 Wall. 418 ; *Reading R. Co.* v. *Pennsylvania,* 15 Wall. 232 ; *Railroad Co.* v. *Richmond,* 19 Wall. 585 ; *Welton* v. *State of Missouri,* 1 Otto, 275 ; *Supervisors* v. *Arrighi,* 54 Miss. 668 ; *The People* v. *Duprint,* 71 Ill. 651 ; *Board of Directors* v. *Houston,* 71 Ill. 318 ; *Harward* v. *St. Clair,* 51 Ill. 134 ; *The State* v. *Lathrop,* 10 La. An. 398 ; *Orleans* v. *Nougues,* 11 La. An. 740 ; *City of New Orleans* v. *Home Ins. Co.,* 23 La. An. 449 ; *The State* v. *Endom,* 23 La. An. 663 ; *Merchants' Mutual Ins. Co.* v. *Tax-Collector,* 24 La. An. 112 ; *Parish of West Feliciana* v. *Gurth,* 26 La. An. 140 ; *Cullinan* v. *City of New Orleans,* 28 La. An. 102 ; *New Orleans* v. *Kauffman,* 29 La. 283 ; *The State* v. *Railroad Co.,* 4 Rich. 376 ; *The State* v. *Columbia,* 6 Rich.

8; *Gatlin* v. *Tarboro*, 78 N. C. 122; *Erie R. Co.* v. *New Jersey*, 31 N. J. 531; *Pope* v. *Phifer*, 3 Heisk. 683.

*Thomas Ball*, Assistant Attorney-General, for the State.

CLARK, J.    This appeal brings before us for consideration and decision the constitutionality of an act of the Legislature of the State of Texas, entitled " An act to provide for the levy and collection of an occupation tax on the sale of spirituous, vinous, and malt liquors in quantities less than a quart, and to make an appropriation to carry the same into effect," approved April 3, 1879, and commonly designated as the " bell-punch law." The particular grounds upon which it is contended by appellant that the act is unconstitutional are, briefly stated, as follows : —

1. Because the act contains more than one subject, in this : —

( *a.* ) It levies a tax for the use of the State.

( *b.* ) It levies a tax for the use of counties.

( *c.* ) It prohibits the levy of a tax on the same subject by the County Commissioners' Court.

( *d.* ) It provides for and regulates the levy and collection of taxes by the cities and towns within the State.

2. Because the subject of the act is not expressed in its title ; the subjects of the act being as stated above, and not being expressed in its title.

3. Because the act undertakes to provide for the levy and collection of a tax on property without reference to its value.

4. Because the act levies a tax which, as an occupation tax, is not equal and uniform upon the same class of subjects.

5. Because the act, in undertaking to provide for the levy and collection of a tax for the use of the counties, and in prohibiting the collection of a tax on the same subject by the counties, usurps the powers and duties of the Commissioners' Courts of the several counties in respect to the

management and control of the business and affairs of their respective counties under the Constitution and laws, and is repugnant to the ancient and well-established political institutions of the State, by which the people of the several counties are entitled to be taxed for county purposes by the immediate representatives of the respective counties, to wit, the Commissioners' Courts, and by no other authority.

6. That said statute requires citizens carrying on a lawful business to pay the tax-collector annually a pretended rent or hire for machines to be employed for the exclusive use of the government, said annual rent or hire being greatly in excess of the actual cost or value of such machines, and no provision being made for its payment over by the tax-collector into the treasury of the State.

Other grounds of constitutional objection were made in the court below, but, as they have not been insisted upon in this court, they will not be discussed.

The purpose and scope of that provision in our State Constitution which requires that no bill, with certain exceptions, shall contain more than one subject, which shall be expressed in its title, cannot at this day be a matter for conjecture or controversy. Since the adoption of our first State Constitution, which, together with subsequent constitutions down to that under which we now live,' contained a provision substantially though not altogether similar, the meaning and construction of the provision have been maturely considered and determined by the courts, and are now as definitely ascertained as adjudication and exposition can make them. *Cannon* v. *Hemphill*, 7 Texas, 208; *Parker* v. *Parker*, 10 Texas, 86; *Robinson* v. *The State*, 15 Texas, 312; *Tadlock* v. *Eccles*, 20 Texas, 792; *The State* v. *Shadle*, 41 Texas, 404; *Breen* v. *Texas and Pacific R. Co.*, 44 Texas, 302; *Davey* v. *Galveston County*, 45 Texas, 291; *Giddings* v. *San Antonio*, 47 Texas, 548; *Holden* v. *The State*, 1 Texas Ct. App. 225; *Hasselmeyer* v. *The State*, 1 Texas Ct. App. 690; *Ex parte Mabry*, 5 Texas Ct. App. 93; *English* v. *The*

*State*, 7 Texas Ct. App. 171. The purposes intended to be effected by this section were to prevent the incorporation into one bill, of provisions of a nature totally diverse and without necessary connection, with a view to effect a general combination of the particular friends of each measure, and thereby secure their enactment when some or all of them would likely fail of becoming laws if left to stand upon their own merits; and also the entrapping of legislators into the support of a bill into which, by dexterous management, some insidious provision had been inserted of which the title gave no intimation. In construing the provision, therefore, courts have almost uniformly refused to adopt a strict and literal construction, which would inevitably tend to the serious embarrassment of legislation, and have uniformly sustained legislation when the several provisions of the act are fairly indicated in the general object as stated in the title, under a rule adopted by themselves, giving to the sections a broad and liberal construction. The general purpose of the provision is fully accomplished when a law has but one general object, which is fairly indicated by its title, and the generality of the title is not objectionable so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection. *Breen* v. *Texas and Pacific R. Co.*, 44 Texas, 302; *Giddings* v. *San Antonio*, 47 Texas, 548; *Ex parte Mabry*, 5 Texas Ct. App. 93; *Railroad Co.* v. *Potts*, 7 Ind. 681; *The People* v. *Briggs*, 50 N. Y. 553; Cooley's Const. Lim. 141-145.

Examined in the light of these established principles, we are not able to say that the legislation in question is violative of this particular provision of the Constitution. The general subject of the act is the levy and collection of an occupation tax on the sale of spirituous, vinous, and malt liquors in quantities less than a quart, and this is clearly and expressly stated in the title. Estimated by its title, it is not an attempt to provide for the levy and collection of

a State occupation tax on this character of employment, or a county occupation tax, or a municipal occupation tax, or a special occupation tax, but it may well be inferred, even from the title, that it was in contemplation to provide a general system of occupation taxes for the State and all its municipal subdivisions, applicable to that particular vocation, separate and apart from the general system of *ad valorem* taxation upon property, and the system of license taxation as pertained to other avocations taxed. The title is broad enough to comprehend State, county, and municipal occupation taxes, when taken and construed with reference to the express language employed, and it is only by inference in opposition to positive terms that it can be construed as intended to apply exclusively to State taxes and no other. It is our duty to give effect to the plain import of legislative language, which we must assume was not idly or loosely employed, rather than to search for some inference upon which to base a construction in opposition to the unmistakable language of the law-making power. The several provisions of the act in question are sufficiently indicated in its title; but if some were not, the only effect would be, under the same section of the Constitution, that such as were not so expressed would be declared a nullity, leaving the remainder to stand as the law of the land. Const., art. 3, sect. 35. The result would be the same without any express constitutional provision to that effect. Cooley's Const. Lim. 148.

This brings us to the consideration of the objection that the act contains more than one subject, which may be discussed and determined in connection with another ground of objection, viz., the undertaking to provide for the levy and collection of a tax for the use of counties, and prohibiting the collection of a tax on the same subject by the counties. In so far as that provision is concerned which provides for and regulates the levy and collection of taxes by the cities and towns within the State, it may be disposed

of here with the single remark that its validity can be best determined when a case is presented involving the attempt on the part of some municipal corporation to avail itself of the privilege afforded by the statute, and its resistance by due course of law on the part of some citizen directly interested in its non-enforcement. For the purposes of this case, it may be valid or invalid without affecting in any manner a right decision of the questions presented.

The statute unquestionably levies a tax for the use of the State and also a tax for the use of the counties, and it also prohibits the levy of a tax on the same subject by the County Commissioners' Courts; but this does not render it obnoxious to constitutional objection. These provisions are all germane with each other, and are all clearly included within the general subject as manifested by the enactment, which is the levy and collection of occupation taxes on the sale of spirituous, vinous, and malt liquors in quantities less than a quart. In the adoption of the system the Legislature was authorized to include in the same enactment every regulation deemed essential to the perfection of the system and necessary to complete its efficiency; and if, in their wisdom, they deemed it compatible with justice and public policy to inhibit local authorities of the counties from interfering with the operations of the system they were contriving, and from imposing additional burdens on the class of citizens upon whom the system was designed to operate, such regulation is as much a part of the general subject of the act as those providing for the levy and collection of the tax. The power to levy and provide for the collection of the tax carries with it the incidental power to provide, in the same enactment, all necessary means for the accomplishment of the legislative purpose properly connected therewith. Cooley's Const. Lim. 146; *English* v. *The State*, 7 Texas Ct. App. 171.

It is urged that the act, in undertaking to provide for the levy and collection of a tax for the use of the counties and

in prohibiting the collection of a tax on the same subject by
the counties, usurps the powers and duties of the Commis-
sioners' Courts of the several counties in respect to the
management and control of the business and affairs of their
respective counties under the Constitution and laws, and is
repugnant to the ancient and well-established political insti-
tutions of the State, by which the people of the several
counties are entitled to be taxed for county purposes by
the immediate representatives of the respective counties, to
wit, the Commissioners' Courts, and by no other authority.
In the grant of powers by the Constitution to the several
departments of government, the taxing power was devolved
upon the legislative branch.    The authorities are abundant
and uniform to the effect that, even in the absence of an ex-
press grant, the taxing power passes to the legislature under
the general grant of legislative power, and that there is no
limit to its exercise except the restrictions that may be im-
posed in the organic law.    Cooley on Tax. 32–66.    The
grant is specific with us, and about as comprehensive as
language can make it.    Const., art. 8, sect. 17.    County
Commissioners' Courts are provided for in the Constitution,
but they are invested only with such powers and jurisdiction
over all county business as may be conferred by the Con-
stitution and laws of the State.    Various duties are de-
volved upon these tribunals by different clauses in the
Constitution, but their taxing powers are derived solely
from statutes, except they are constituted a board of equal-
ization by the Constitution.    Art. 8, sect. 18.

Courts are not authorized to hold a statute unconstitu-
tional merely because, in their opinion, it may be violative
of public policy or contrary to what they may esteem the
general spirit of the constitution or the genius of our polit-
ical institutions.    When they conclude that an act of the
legislature is void by reason of its unconstitutionality, they
must be able to point with certainty to the exact provision
of organic law violated by the enactment.    Cooley's Const.

Lim. 164–169.   Subject to the limitations of the constitution, the local affairs of each political subdivision of the State are completely within the control of the legislature and are creatures of its pleasure ; and counties are perhaps more completely so than municipal corporations proper. So perfect is the legislative power over counties that they exist only by its sufferance, and they can exercise the taxing power only when it is delegated to them by the legislature in the particular instance, and without such legislative warrant their attempt to enforce taxation would prove futile. The power to delegate necessarily implies the power to withhold, to change, to modify, and to prohibit, and it is competent for the legislature, in an emergency, to administer county affairs through agencies other than those usually provided by general statute or custom.   *The People* v. *Mahoney*, 13 Mich. 500 ; *Hamilton et al.* v. *St. Louis County*, 15 Mo. 20 ; *The State* v. *St. Louis County*, 34 Mo. 546 ; *The People* v. *Draper*, 15 N. Y. 547.   Maxims and customs in government, which have been sanctified by age and experience, address themselves with peculiar force to the wisdom of the legislature, and to adhere to them as far as possible is doubtless to keep in the path of wisdom ; but they do not constitute restrictions so as to warrant the other departments in treating the exceptions which are made as unconstitutional.   Cooley's Const. Lim. 170.

The third ground of objection is that the act undertakes to provide for the levy and collection of a tax on property without reference to its value.   If this is true, in a legal view, then, as has been said in argument, few or none of the taxes imposed upon occupations are constitutional. Taxes levied upon the occupations of merchants, drummers, photographers, ship-chandlers, peddlers, and many others that might be named, come within the same category ; and yet the Constitution expressly authorizes the Legislature to impose occupation taxes, both upon natural persons and corporations, other than municipal, doing any business

in this State, and places no limitation whatever upon the power, save to require that all occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax, and no occupation tax shall be levied on pursuits agricultural or mechanical. Const., art. 8, sects. 1, 2. The right to levy an occupation tax on retail dealers is, therefore, beyond question, and it only remains to be ascertained if the tax in question is an occupation tax. From the authorities this seems to be equally as clear. Judge Cooley, in his work on Taxation, says: "The methods in which business shall be taxed are also in the legislative discretion. The taxes which are most customary are: 1. On the privilege of carrying on the business. 2. On the amount of business done. 3. On the gross profits of the business. 4. On the net profits, or profits divided. But the tax may be measured by other standards, prescribed for the purpose, as well as by these. * * * It is no conclusive objection to any such tax that it duplicates the burden to the person who pays it. To tax a merchant upon his stocks as property, and also upon his gross sales, may seem burdensome, but it is not unconstitutional when not expressly forbidden by the Constitution. The two taxes are not identical, and though they may operate unjustly in particular cases, they are supposed to be imposed because the general result is equal and just." Cooley on Tax. 384.

In a recent well-considered case in Tennessee, involving the power of the Legislature to impose an *ad valorem* tax upon the stock in trade of a merchant, and also an occupation tax equal in amount to the *ad valorem* tax, Chief Justice Nicholson, in announcing the opinion of the court sustaining the constitutionality of the act, commends the doctrine in *Brown* v. *Maryland*, 12 Wheat. 441, and deduces clearly the distinction between the doctrine of that and subsequent cases in the same line, and cases like this at bar. In the course of an elaborate and able opinion this language

occurs : " But it is contended that as an *ad valorem* tax was assessed on the plaintiff's merchandise, equal to the tax on other property, no additional tax could be assessed against him as merchant. Under the construction we have placed upon the Constitution, the Legislature had the power to determine the amount of tax to be assessed upon the plaintiff as merchant, and also to determine the manner or mode in which the tax should be assessed and collected. It was therefore competent for the Legislature to provide that the amount assessed upon the plaintiff should be ascertained by requiring an amount equal to the *ad valorem* tax to be assessed against him as merchant. It is the manner or mode prescribed for assessing the tax on merchants, and falls clearly within the discretion conferred upon the Legislature, both as to the amount of the tax and the manner of ascertaining and assessing it. * * * The fact assumed by the court in *Brown* v. *Maryland* may be conceded to be true in the present case : that the merchant may, if he choose, impose upon his goods the additional license tax which he is required to pay, and in that way the selling price of his goods may be enhanced. In this way the merchant becomes a tax-gatherer for the State, instead of a tax-payer. It is because of this power that he has to reimburse himself by adding his own taxes to the price of his goods, that the merchant has at all times been taxed nominally much higher than those whose taxes depended on the value of their property. In this way he has been an important financial agent of the State, in assessing and collecting taxes from the consumers of his goods. It was reasonable to presume that it was on account of the peculiar nature of his occupation, and his power to protect himself from unjust taxation by distributing the burden among his customers, that the framers of the Constitution of 1834 and of 1870 expressly subjected the merchant to the unrestricted power of taxation by the Legislature." *Jenkins* v. *Ewin*, 8 Heisk. 481 *et seq.* See also *Walcott* v. *The People*, 17 Mich. 86 ; *Straub*

v. *Gordon*, 27 Ark. 625 ; *Hodgson* v. *New Orleans*, 21 La. An. 301 ; *Burch* v. *Mayor*, etc., 42 Ga. 596 ; *Bohler* v. *Schneider*, 49 Ga. 195.   Our conclusion is that the tax in question is a tax upon the business of a retail dealer in spirituous, vinous, or malt liquors, and not a tax upon the property employed in such business.

It is hardly necessary to discuss the remaining grounds of objection, to wit, that the act levies a tax which, as an occupation tax, is not equal and uniform upon the same class of subjects, and undertakes to collect money, not as a tax, but as annual rent for "registers," with no provision for the payment of said money into the treasury.

The class of subjects proposed to be taxed were retail dealers in spirituous, vinous, and malt liquors, and the provisions of the law are made to apply to all such dealers within the limits of the authority levying the tax.   That more money may be collected from one dealer than another does not destroy the equality or uniformity of the system, within the meaning of the Constitution, but the tendency and effect is decidedly to the contrary.   "Perfectly equal and uniform taxation will remain an unattainable good as long as laws and government and man are imperfect." Approximation to it is all that can be had, and this is remitted to the patriotic judgment of the law-making power. Whether a tax is just and equal or not, is not a question of law.   If it were, courts, by adopting a standard of rigid construction, might altogether put a stop to taxation; for no system ever devised, whether it related to a tax on property or on business, or a capitation tax, ever in its practical operations bore equally and uniformly on the same class of subjects.   If there is such equality and uniformity as conforms to the standard provided in the Constitution, or reasonably deducible from it, it is all that can be required. *Texas Banking and Insurance Co.* v. *The State*, 42 Texas, 639 ; *Youngblood* v. *Sexton*, 32 Mich. 414 ; Cooley on Tax. 124–127.   Viewed in its twofold aspect, the law in question

is free from objection on this account.  It levies a specific occupation tax of $250 on every dealer in the State, exempting no person or section from its operation, and requires every dealer alike to pay this tax as a prerequisite to his selling, and then, as if anticipating complaint that the tax ought to have been graduated according to sales, it introduces that feature also, after a certain amount of sales have been made, and lays the additional burdens on those of the class whose prosperity in business best enables them to bear it.  As appellant fails to bring himself within the latter category, and to show that at the time of the prosecution his credit of $250 had been exhausted, and that the State was in fact collecting from him in money the stipulated excise on each drink sold, it is hardly necessary to determine whether that feature of the law is uniform or not.  But we see no objection to either, or to both as a whole.

The " registers " are a part of the system devised for the proper calculation of the tax and ascertainment of the amount due.  If the State has a right to levy and collect an occupation tax according to the amount of sales, as we have seen it has, then it was clearly competent for it to adopt a method for the enumeration of the number of drinks, and to require those voluntarily engaging in the occupation to bear the burden of its collection.  Had the Legislature seen fit, it might have authorized the appointment of an inspector for each bar-room or beer-saloon, and devolved upon him the duty of keeping an account of the sales, instead of employing an automatic mechanism for that purpose.  And the additional expense incurred by the system is more justly devolved upon those who may choose to engage in the special calling than upon the general public at large.

With the policy or impolicy of laws, courts have no concern.  Their duty is confined to a comparison of the law with the Constitution, and if it violates no provision of the paramount law, and the Legislature has not in its enactment transcended the limits fixed by the people in their sovereign

capacity, courts are as powerless to correct the evil supposed to follow the enactment of bad laws as the same number of private individuals. If the particular law under discussion is unjust or impolitic, and bears with undue weight upon any particular class of citizens, the remedy is with the people themselves in their political capacity, and not with the courts; and the duty of the latter is ended when they ascertain that the law is within constitutional limitations, whether the enactment was an abuse of power or not.

The judgment of the court below is in all things affirmed. *Affirmed.*