May Term,
1858.

Woodcock
v.
McQueen.

Wednesday,
May 26.

WOODCOCK *v.* McQUEEN.*

An election is not a game, within the meaning of § 2, 1 R. S. p. 305.

Where a bet or wager is laid and lost upon the result of an election, or upon any other act, event, or fact, except a game, it cannot be recovered under the statute.

APPEAL from the *Bartholomew* Circuit Court.

PERKINS, J.—Suit to recover the value of personal property. Answer in two paragraphs—1. General denial. 2. That the property was sold by the plaintiff to the defendant under an agreement that, if *Morton* should be elected governor at, &c., the defendant should pay to the plaintiff double the value of the property; but if *Willard* should be elected, nothing was to be paid, &c.

The Court overruled a demurrer to this paragraph; and, for want of further reply thereto, gave judgment for the defendant. Proper exceptions were taken.

The contract set up in the answer was illegal and void. It was a wagering contract. *Parsons* v. *The State*, 2 Ind. R. 499.—*Duncan* v. *Cox*, 6 Blackf. 270. Such being its character, neither party could, at common law, sustain an action upon it. That law would leave the parties just where they had placed themselves. *M'Hatton* v. *Bates et al.*, 4 Blackf. 63.

But it is claimed that our statute has authorized an action by one of the parties to such a contract, viz., the losing party. 1 R. S. p. 305, §§ 1, 2. Section 1, enacts that all instruments executed upon a wagering consideration shall be void. Section 2 is as follows: "If any person by betting on any game, or betting on the hands or sides of such as play at any game, shall lose to any one, any money, or valuable thing, and shall pay or deliver the same, or any part thereof, the person so losing and paying or delivering the same, may within six months next following, recover, &c.

* The petition for a rehearing in this case was filed on the 20th of *July*, and overruled on the 13th of *October*.

This statute so far changes the common law as to enable those who have lost and paid their bets upon games, to recover back the amounts of bets thus paid. The question, then, in the case at bar is, was the bet upon the gubernatorial election in *Indiana*, held on, &c., a bet upon a game? In other words, is an election, in a popular government, held pursuant to the constitution and laws of such government, a game, in the legal sense of that term? We had not supposed that such was the theory of our elections. A game, we had looked upon as a thing of chance, skill, or trick—involving no principle, no truth—as vicious in itself, or tending to vice—a thing played by gamesters, with their own limbs, or with implements, or instruments having no wills of their own, but simply doing that of the respective players; while an election, we had regarded as being a thing done pursuant to law, in which all the actors were agents, possessing free wills of their own, judgments, and motives which determined their courses of action, guided by fixed principles, and views pertaining to the general welfare which they desired to promote. And, it still seems to us, that to regard candidates and politicians in our elections, as players of games of chance, and the people as implements with which they play them, would be derogatory and degrading to the character of our government, and of pernicious influence, as tending to destroy that high tone of moral and political principle and patriotism, and sense of dignity, which should ever be fostered and upheld among the people.

The reasoning by which counsel seek to establish that an election is a game, seems to be this: that betting upon an election is a wager; that a wager is a game; and that a game is a wager; and, hence, that an election is a game or wager. But the error in this reasoning grows out of a confusion of terms. A wager is not a game. Says McKinney, Justice, in *M'Hatton* v. *Bates et al., supra*—" No reasoning is required to prove that a wager is not a game, for the proposition is self-evident." It is equally self-evident that a game is not a wager.

A game is a thing played or done. A wager is the bet

or stake laid upon the result of the game. Bet and wager are synonymous terms, and are applied, both to the contract of betting and wagering, and to the thing or sum bet or wagered. For example, one bets, or wagers, or lays a bet or wager of so much, upon a certain result. But these terms cannot properly be applied to the act to be done or event to happen, upon which the bet or wager is laid. Bets or wagers may be laid upon acts to be done, events to happen, or facts existing, or to exist. The bets or wagers may be illegal, and the acts, events, or facts upon which they are laid, may not be. Bets or wagers may be laid upon games, and things that are not games. Everything upon which a bet or wager may be laid is not a game. Examples under these propositions:—Wagers have been laid upon games played with cards, dice, &c., with horses, and one's own limbs, as horse and foot races (*Wade* v. *Deming*, 9 Ind. R. 35); upon elections; upon law suits; upon principles of law; upon the sex, religion, life, and marriage of a person; upon the question whether a certain person would become a king; upon the amount of the revenues of a government in a given year; upon the mode of playing a game, &c.

Now, it is not necessary to argue that some of the foregoing acts, events, and facts upon which bets or wagers were made, were not illegal or immoral; and it would seem to be unnecessary to enter into an argument to prove that some of them were not games. But where bets or wagers are laid and lost, except upon games, they cannot, even by our statute, be recovered back. And as we have come to the conclusion that an election cannot be classed as a game, it follows that the wager lost and sued for in this case cannot be so recovered.

*Per Curiam.*—The judgment is affirmed with costs.

*W. Herod* and *S. Stansifer*, for the appellant (1).

(1) Counsel for the appellant submitted the following argument, in substance, to-wit:

It is contended by the appellees that betting on an election is not gaming, within the meaning of § 2 of the statute, 1 R. S. p. 305, and *M'Hatton* v. *Bates, et al.*, 4 Blackf. 63, is relied upon. That case is not in point. There, the

property was delivered by the loser to the winner, after the result was known, and the Court seem to have placed much stress upon that fact.

In the case of *Wade* v. *Deming*, 9 Ind. R. 35, the bill of exceptions showed that the money lost was not only not paid by the loser to the winner, but was paid by the stakeholder to the winner, against the express command of the loser. And it was urged by the appellant in that case, that, for this reason, the case did not come within the meaning of the statute; but this Court decided otherwise.

Again, the statute of 1831 might bear the construction put upon it in *M'Hatton* v. *Bates et al.*, but the statute of 1852 will not bear that construction. True, § 2 of the act of 1852 is a literal copy of § 2 of the act of 1831; but the whole act must be considered. By § 1 of the act of 1831 (R. S. 282), all promises made, &c., when the consideration thereof shall be for money, &c., won, &c., on any game of cards, or *other game*, or at any horse-race, &c., or any *wager* whatever, was void. Section 2 of that act uses the word *game* only. So it might be inferred that the word *game* should designate one species of betting, and the word *wager* another species. In § 1 of the act of 1852, the term *wager* only is used; and in § 2, the word *game* only is used. They are evidently used as convertible terms. The construction contended for by the appellees would commit the legislature to the absurdity of having provided that obligations given for the payment of money lost on any *game* may be sued upon, and recovery had, except in cases where no recovery could be had at common law; and that the loser, after paying the judgment, might turn around and recover it back. The legislature intended by the two sections, taken together, that all betting contracts should be void, and that all money, &c., lost and paid on any bet, might be recovered back. The title of the act proves this. It is—"An act touching gaming contracts"—the word *gaming* being intended to cover the whole ground.

But even if the acts of 1831 and 1852 were in all respects identical, and were this case and *M'Hatton* v. *Bates et al.* similar, that decision has been overruled in *Cheesum* v. *The State*, 8 Blackf. 332, and in *Wade* v. *Deming*, *supra*. And in the latter case the Court say: "The idea of a game of horse-race is ridiculed, without a just appreciation, perhaps, of the purposes of all such enactments. It seems obvious that the same vicious principle runs through all bets, whether they be upon a horse-race, or upon cards, or any other undetermined event. It is not the race or the play that the legislature is aiming at, but the betting for money or other valuables."

May Term, 1858.

WOODCOCK
v.
McQUEEN.