THE STATE OF TEXAS V. F. J. PARKER, ADM'R.

(Case No. 908.)

1. PATENT — SALT LAKE — CONSTITUTION CONSTRUED. — By an act of date February 11, 1850, the state relinquished all her rights to land described in a designated patent. The patent to that land had issued in 1847 from the state, and embraced a large salt lake, the bottom of which contained pure crystallized salt. At the time both of the issuance of patent and of the act releasing the rights of the state in the land, a statute was in force reserving salt springs, gold and silver mines, copper and lead and other minerals on public land from location. In a suit between the state and one claiming under the patent, *held.*

(1) The validating act was not violative of art. 7, sec. 24, of the constitution of 1845, as embracing an object not designated in its title.

(2) None of the provisions of that act of the legislature could be regarded as unconstitutional, since they related to the same subject, had a mutual connection, and were not foreign to the subject expressed in the title.

(3) The effect of the validating act was to confirm to the patentee a legal title to the soil covered by the patent.

(4) The effect of art. 7, sec. 39, of the constitution of 1866, was to release to those owning the land all the salt and mineral substances on the land.

APPEAL from Hidalgo. Tried below before the Hon. John C. Russell.

This suit was brought in the name of the state of Texas as plaintiff, July 9, 1872, against Salvador Cardenas and others, and against Parker, administrator of Reynolds, alleging the title of the state to the salt lake notoriously known as "El Sal del Rey," comprising about a square league, ouster therefrom by defendants, prayer to recover the same, and indorsement that the suit was brought as well to try title as for damages.

The defendant Parker pleaded his title under a patent from the state to H. M. Lewis, which issued December 20, 1847. Confirmation of the same and release to the patentee of the land therein granted, by act of the legislature, February, 1850, and conveyance by Lewis to his intestate, Reynolds, March 9, 1852, and he prayed judgment to quiet his title against the state and against his co-defendants.

Cardenas and others pleaded a grant from the viceroy of Spain, in 1798, to Juan Jose Belli; a sale of the premises in controversy to Cardenas and Lomitators; and during the pendency of the suit set up the recovery of a judgment against the state in the district court of Travis county, March 3, 1873, for this land. They also prayed a decree to annul and set aside the title under which Parker claimed, and to quiet their title.

The state dismissed as to the defendant Cardenas; denied the validity of the title to Lewis, and specially pleaded a joint resolution of the legislature of July 10, 1862, setting up title to said salt lake and requiring an agent for the state to take possession of it.

The decree of the court below, September 20, 1877, was that the state take nothing by her suit, and for recovery by Parker of the land set out in his patent.

*Powers & Maxan,* for appellant, cited: State *v.* Delesdenier, 7 Tex., 76; Goode *v.* McQueen's Heirs, 3 Tex., 255, 256; Mason *v.* Russell, 1 Tex., 729, 730; 1 Pasch. Dig., arts. 804, 4402; Law 1, title 18, book 9, of the Novisima Recopilacion, taken from law 47, title 32, of the Ordenamiento de Alcalá, framed by Alonzo the Wise; Chronicles of Don Alfonzo, ch. 37; Law 13, title 23, book 8, Recopilacion de las leyes de Indias; United States *v.* Repentigny, 5 Wall., 268; Leffingwell *v.* Warren, 2 Black, 605, and authorities; 21 Wallace, 660.

*Ballinger, Mott & Terry,* for appellee, cited: Art. VII, sec. 39, Const. of 1866; art. X, sec. 9, Const. of 1869; art. XIV, § 7, Const. of 1875; Robinson *v.* Varnell, 16 Tex., 389; Broom's Legal Maxims, 550; Potter's Dwarris, 128; Sedgwick on Construction, 227; Lewis *v.* San Antonio, 7 Tex., 288; Melton *v.* Cobb, 21 Tex., 541; Wilkinson *v.* Leland, 2 Peters, 662.

WATTS, J. COM. APP.— At the time the act was passed validating the patent to Lewis, and relinquishing all the state's right to the land therein embraced, the act of June 3, 1837, reserving "salt springs, gold or silver mines, copper or lead, or other minerals," had not been judicially examined and construed. And it may have been the object of the validating act to remove all doubt as to the validity of the patent, and to show that the land therein embraced was vested in Lewis and his vendees. It was, perhaps, a precautionary measure to obviate the effects of any adverse construction of the act of 1837 that might thereafter be had.

Subsequently, however, in Cowan *v.* Hardeman, 26 Tex., 219, the act of 1837 was judicially examined and construed, and it was there held that its effect was not to reserve the land from location and survey, but thereby the state reserved an easement, and had the right to enter upon the land, and gather, make, or dig for, and carry the salt away; and to make such use of the land as was neces-

sary in the full enjoyment of the reserved right.   That a patent to lands upon which there was a salt spring was not void.

If it should be conceded that the patent to Lewis was voidable on account of its including the salt lake, still the validating act removed all doubt, and made the patent regular and valid.

Even if that was not so, yet it could only be vacated at the instance of the state, in a direct proceeding brought for that purpose.

It does not appear to us that the validating act was a violation of the constitution in force at the time of its passage.   Its title is as follows, viz.: " An act to validate certain patents therein designated." By the first section this and  other patents were ratified and confirmed, and by the second section the state of Texas relinquished all her right to the lands described in the patents to the grantees.   Appellants claim that this act embraced more than one object, and was in violation of art. 7, sec. 24, of the constitution of 1845, which says, "Every law enacted by the legislature shall embrace but one object, and that shall be expressed in the title."

This provision of the constitution has frequently been construed by the supreme court.   And it has been held that it must be liberally construed, and that " none of the provisions of a statute should be regarded as unconstitutional when they relate, directly or indirectly, to the same subject, have a mutual connection, and are not foreign to the subject expressed in the title."   Breen v. T. & P. R. Co., 44 Tex., 306; Giddings v. San Antonio, 47 Tex., 556; Tadlock v. Eccles, 20 Tex., 792.

Here the object expressed was to validate the patent; and without having so expressed it in the section, validating the patent would in law have the effect of relinquishing to the grantee all the right of the state to the land therein embraced.   The second section was not essential to such relinquishment; that was accomplished by validating the patent.   But the matter contained in that section does not by any means violate the constitutional provision.   For the validation of the patent, and the relinquishment of the right of the state to the land it includes, relate directly to the same object.

Then, if it should be conceded that the patent when issued was voidable, and could have been vacated and annulled at the instance of the state by direct proceeding for that purpose, undoubtedly, after the passage of the validating act, no such proceeding could be maintained by the state.

In the constitution of 1866 it was provided "That the state of Texas hereby releases to the owner of the soil all mines and mineral

238 STATE OF TEXAS V. PARKER. [Galv. Term,

Opinion of the court.

substances that may be on the same, subject to such uniform rate of taxation as the legislature may impose. All islands along the gulf coast of the state, not now patented or appropriated by locations under valid land certificates, are reserved from location or appropriation in any other manner by private individuals than as the legislature may direct." Art. 7, sec. 39, Const. of 1866.

It has been heretofore seen that the soil embraced and included in the patent was vested in Lewis and his vendees, and confirmed to them by the validating act. Hence by the terms of the constitutional provision quoted above, that released to them all the mines and mineral substances on the land.

It is apprehended that by no one in any way familiar with the elementary principles of chemistry and mineralogy, would salt be classed otherwise than as a mineral substance. So far as we are informed it is so regarded by all classes — the common people as well as those having special learning upon the subject.

By the use of the terms "all mines and mineral substances," the convention must have intended to include salt lakes, springs, etc., as well as gold, silver and copper mines. These were all reserved by the same act to the state, and are embraced and included in the ordinary acceptation of the terms mines and mineral substances.

This view derives strength from the fact that by the same provision the reservation as to the islands along the gulf coast is continued, and none of the things theretofore reserved except the islands are mentioned in that connection. This provision evidenced a change in the former policy of the state with reference to mines and mineral substances. Theretofore in making grants of land the state had reserved the mines and mineral substances. But by this provision these were released to the owner of the soil whether the grant was made before or after that time. This provision is in substance embodied both in the constitution of 1869 and that of 1875.

No reason is perceived why a different policy should prevail as to mines than as to salt lakes and salt springs. And we conclude that all mines and mineral substances, including salt lakes, etc., now of right belong to the owner of the soil, and that therefore the judgment ought to be affirmed.

AFFIRMED.

[Opinion approved March 10, 1884.]