## Ex Parte Mike Hernan.

### No. 2762.   Decided November 11, 1903.

**1.—Information—Habeas Corpus—Anti Pool Room Statute.**

After information filed on habeas corpus for violating the anti pool room statute, enacted by the Twenty-eighth Legislature (Gen. Laws, p. 68), it was contended that the caption of the bill, as enacted, does not specifically mention "book making," a method of gaming or betting on horse racing, and is, therefore, unconstitutional.   Held, without merit, "book making" being a mere species of betting on horse racing, which, in the preamble of the above mentioned statute, sufficiently apprises all of the fact that all species of betting on horse racing could or might be embodied in the act, since the subject is the same.

**2.—Same—Constitutional Law—Subject of Legislation.**

Where the subject of legislation is stated in the preamble to an act of the Legislature, any article may be placed under such preamble by the Legislature which is subsidiary to, connected with and necessarily incidental and germane to the main subject.

**3.—Same—Discrimination—Class Legislation.**

Where it was contended that the act itself, or section 3 of said act, would permit the owner to use his premises for the selling of pools, etc., on horse racing, but would punish him if he permitted another to so use the premises so owned or leased by him, and that the same was, for that reason, class legislation and violative of the fourteenth amendment to the Constitution of the United States; Held, where all persons of the same class are made amenable to the law, and there is no discrimination in the act against persons in the same class, the same is constitutional.

**4.—Pool Selling—Buying Pools—Statute Construed.**

Section 1 of said act means that if any one shall engage in the business, or occupy himself in the business of selling pools, he shall be fined, etc.; while section 2 provides, "if any person shall buy pools, or otherwise wager anything of value on any horse race," etc., "he shall be fined," etc.   Held, clearly within the power of the Legislature to make the penalty for engaging in the prohibited business more onerous than the mere betting on the same, and that the two are not the same offense.

From Bexar County.

This is an original application for habeas corpus to Presiding Judge Davidson of the Court of Criminal Appeals, which was granted and made returnable before the court.

The only question in the case is the constitutionality of the act of the Twenty-eighth Legislature (Gen. Laws, p. 68) ordinarily known as the "anti pool room law."   The opinion below states the case, giving the statute in full.   The following is the agreed statement of facts presented, together with the application to this court, viz.:   "That Mike Hernan, in Bexar County, Texas, on the 4th day of July, A. D. 1903, leased from the duly authorized representatives of the San Antonio International Fair Association a house and building, and had the same under his control on said 4th day of July, A. D. 1903; that said building was situated in Bexar County, Texas, at the race track of said fair association; that in said building he made a list of the horses entered in a certain race in Chicago, as follows:   Fore and Aft, Santon, Postmaster Wright, Flo Carlin, Flying Ship, Monsieur Beaucaire, and Sioux Chief, and posted the same conspicuously and placed the odds opposite each horse, indicating at what price he would accept bets on said horses; that said horses

were entered in a race to take place in the city of Chicago, in the State of Illinois, on the 4th day of July, A. D. 1903; that said horses, with the odds placed opposite them, were posted before said race took place, and after said odds were posted said race actually took place in said city of Chicago, in the State of Illinois; that at the same time and place Mike Hernan made and posted the names of the horses entered in a certain three-quarter mile race to be run in San Antonio, Texas, on the track of the San Antonio International Fair Association, in Bexar County, Texas, as follows: Lillie W., Uneeda Boy, Lively Jim, and Gray Eagle, and placed opposite the name of each horse the odds at which he would accept bets on said horses; that the names of said horses last mentioned were posted on said 4th day of July, A. D. 1903, and before said race was run, and thereafter on the same day said race was run between said horses; that on the same day Theodore Banks went to the race track of said fair association, and went to said building, and found opposite Flying Ship, one of the horses entered in said Chicago race, odds of one to three, and posted opposite the horse Lively Jim, entered in said San Antonio race, odds of one to two, and then and there bet and wagered with Mike Hernan ten (10) dollars that both of said horses would win both of said races, and received a ticket indicating the amount paid and the horses that he bet on from said Mike Hernan; that said bet was made between said Mike Hernan and said Theodore Banks after the names of said horses were posted as aforesaid and before either of said races had been run; that thereafter said races were run and said Flying Ship and Lively Jim did not win both of said races, and said Mike Hernan won, kept and received the ten (10) dollars so paid and wagered to him by the said Theodore Banks on said races, and the said Mike Hernan did then and there, on both of said races, make books, sell pools, take and receive a bet, and did bet and wager something of value on each of said races at one and the same time, in Bexar County, Texas. That Mike Hernan is now confined in the county jail of Bexar County, Texas, by virtue of said prosecution."

*Newton & Ward, W. A. Hanger, Cecil Smith,* and *William P. Ellison,* for petitioner, filed an elaborate printed brief in the case, and Wm. P. Ellison also filed an interesting printed argument, citing authorities, as to the unconstitutionality of the statute. (This brief and argument, it is to be regretted, are too lengthy to be reproduced here.—Reporter.)

*O'Brien, John & O'Brien* and *Howard Martin,* Assistant Attorney-General, for the State, also filed an able brief on the constitutionality of the statute.

BROOKS, Judge.—Valid information was filed against relator in the County Court of Bexar County, charging him with violating what is ordinarily known as the "anti pool-room law," adopted by the Twenty-

eighth Legislature. See Gen. Laws, 28th Leg., p. 68. The relator sued out a writ of habeas corpus, and, being refused by the county judge, it was presented to the presiding judge of this court, and the writ was granted, being made returnable before the court at its present sitting. Under the agreed statement of facts filed herein, it is admitted that relator violated all of the various provisions of the act in question. The only insistence of relator is that the act is unconstitutional, for the reasons which we will proceed to notice.

The act of the Legislature, in full, is as follows:

"An act to prohibit the buying and selling of pools, or receiving or making bets on horse racing; to prohibit leasing of premises for pool rooms, and to provide a penalty for its violation.

"Section 1. Be it enacted by the Legislature of the State of Texas: If any person shall engage or assist in pool selling, book making, taking or accepting any bet on any horse race, he shall be punished by a fine of not less than $200 nor more than $500, and imprisonment in the county jail for not less than thirty days nor more than ninety days.

"Sec. 2. If any person shall buy, pool or otherwise wager anything of value on any horse race at any time or place, he shall be punished by a fine of not less than $25 nor more than $100.

"Sec. 3. If any owner or lessee of any property in this State shall permit the same to be used as a place for the sale of pools, book making or wagering on any horse race to be had in this or any other State, he shall be punished by a fine of not less than $200 nor more than $500, and imprisonment in the county jail for not less than thirty days nor more than ninety days, and each and every day that the provisions of this article are violated shall constitute a separate offense. It being the intention of the foregoing article to prohibit pool rooms or other places where persons may congregate for buying and selling pools, or otherwise wagering anything of value on horse racing."

Relator, in his first proposition, insists that the caption of the bill, in referring specifically to a method of gaming or betting upon horse races, does not mention that species of betting on horse races known as "book making," while sections 1 and 2 of the act itself seek to punish the selling and buying, or the tendering or accepting of that particular kind of betting upon horse races; that, therefore, the act is broader than the caption, and, for that reason, is unconstitutional."

Many of the questions urged by relator as to the constitutionality of this act were treated by this court in construing a similar statute in Fahey v. State, 27 Texas Crim. App., 146. Article 3, section 35 of the Constitution reads: "No bill * * * shall contain more than one subject, which shall be expressed in its title. But, if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed." In the former Constitution, the word "object" was used instead of the word "subject," as contained in the article just quoted. "Judge Bonner,

in Stone v. Brown, 54 Texas, 341, observes that 'it may be presumed that the convention had some reason for substituting a different word from that which had been so long in use in this connection; and that, in the light of judicial expressions, the word 'subject' may have been thus substituted as less restrictive than 'object.' In Peo v. Lawrence, 36 Bar., 192, the Supreme Court of New York says: 'It must not be overlooked that the Constitution demands that the title of an act shall express the *subject,* not the *object,* of the act. It is the matter to which the statute relates, and with which it deals, and not what it proposes to do, which is to be found in the title. It is no constitutional objection to a statute that its title is vague or unmeaning as to its *purpose,* if it be sufficiently distinct as to the matter to which it refers.' " Fahey v. State, supra.

Now, referring to relator's objection that the fact that the preamble does not eo nomine mention that peculiar character of betting on horse racing, and, therefore, renders that clause of the article unconstitutional. We say this contention is without merit. Book making is a mere species of betting on horse racing; and the preamble above quoted sufficiently apprises all mankind of the fact that all species and character of betting on horse racing could or might be embodied in the act itself, since the subject is the same. As indicated in Stone v. Brown, quoted above, the Constitution clearly intended a broader construction by changing the word "object" to "subject." One "subject" may contain many "objects." Giddings v. San Antonio, 47 Texas, 548; State v. Parker, 61 Texas, 267; Nicholas v. State, 32 Texas Crim. Rep., 404.

As we understand the constitutional provision under consideration, where a preamble states the subject of legislation, any article may be placed under said preamble by the Legislature which is subsidiary to, connected with, and necessarily incidental and germane to the main subject involved. To hold otherwise would necessarily embarrass legislation, and would require that the title should be as full as the bill itself.

Counsel for relator in their able brief draw a marked distinction in the method of selling pools and selling bets on horse races through the method of book making. However accurately this distinction may be drawn in practice, there is necessarily a betting on a horse race; and it would be a strained construction for this court to hold relator's contention that, because the species of betting on horse racing was not mentioned eo nomine in the preamble, the act would therefore be void. Relator cites a Virginia case (17 S. E. Rep., 547); but, in our opinion, this case is not applicable to the question now under consideration, since the Virginia Constitution provides that the preamble must state the "object" of the legislation; and hence is not as broad as the provisions of our own Constitution, above quoted.

Relator's second proposition is that the act itself, or at least section 3 of the act, would, under the construction given it by relator, permit the owner to use his premises for the purpose of selling pools, etc., on horse racing, but would punish him if he permitted another to so use premises

owned or leased by him; and, for that reason, would exempt a certain class from the provisions of said act, while others would be punished; and, therefore, in violation of the fourteenth amendment to the Constitution of the United States. If it be conceded that relator's statement is correct, this would not render the act unconstitutional, because all persons in the same class are amenable to the law, and there is no discrimination in the act against persons of the same class. We know of no constitutional inhibition preventing the Legislature from prescribing different penalties for different acts, or different classes of the same act. This question is thoroughly discussed in Searcy v. State, 51 S. W. Rep., 1119, and also in Fahey v. State, supra.

Relator's third proposition is that sections 1 and 2 of said act in any event are unconstitutional, because the identical act prohibited in section 1 is also prohibited in section 2, while the punishment is of a different degree. Section 1 provides, if any person shall engage or assist in pool selling, etc., his punishment shall not be less than a fine of $200 nor more than $500, and imprisonment in the county jail for not less than thirty, nor more than one hundred, days. This, as we understand, means, if any one shall engage in the business or occupy himself with the business of selling pools, etc., he shall be fined and imprisoned as indicated. Whereas, section 2 provides, if any person shall buy, pool, or otherwise wager anything of value on any horse race, etc., he shall be fined not less than $25, nor more than $100. It is clearly within constitutional power of the Legislature to make the penalty for engaging in the prohibited business more onerous than a betting. This, as we understand, is all the Legislature has attempted to do. We do not think it necessary to go into a further discussion as to whether wagering and betting are one and the same thing, as, in our view, it is immaterial. For the sake of argument, it may be conceded that they are not one and the same. Section 1 prescribes the penalty for pursuing the business; and section 2 prescribes the penalty for the betting on a horse race.

In view of the disposition made of relator's various contentions above, we do not deem it necessary to pass upon other objections to the constitutionality of the act in question. Suffice it to say that we believe the preamble of the act covers all the subject matter embraced in the act; and there is no variance between the preamble and the act; nor is the act unconstitutional on the ground that it violates the fourteenth amendment to the Constitution of the United States. We therefore hold that the whole act of the Legislature under consideration is constitutional.

The relator is accordingly remanded to the custody of the officer, until he give bond as provided by law.

*Relator remanded.*