## Ex Parte Jack Walsh.

### No. 499. Decided May 25, 1910.

**1.—Betting on Horse Race—Caption of Law—Subject not Embraced—Constitutional Law.**

It is a sufficient compliance with the Constitution if the law enacted has one general object which is fairly indicated by its title or caption, although it may embrace different subjects which are connected with or appropriated for the accomplishment of this general object, and this provision of the Constitution must be liberally construed.

**2.—Same—Accepting and Receiving Money to be Bet on Horse Race, and Transmitting Same by Telegraph.**

Under the Act of the Thirty-first Legislature, page 91, which provides in its caption that it is to prohibit the buying and selling of pools, or receiving or making bets on horse racing, etc., all acts which are in any manner in aid and furtherance of the practice of receiving or making bets, are included; and where defendant was charged with receiving money and sending same by telegram to the State of Oklahoma to be bet on a horse race in the Republic of Mexico, the same was a violation of said Act.

**3.—Same—Bets—Making and Receiving Bets.**

The Act of the Thirty-first Legislature prohibiting the buying and selling of pools, or receiving or making bets on horse racing, does not only include the subject of bets but all acts subsidiary thereto, and embraces the act of transmitting money by telegraph in the State or elsewhere as a bet on horse racing.

**4.—Same—Extra-Territorial Jurisdiction—Surplusage.**

The Act of the Thirty-first Legislature, page 91, does not attempt to apply itself beyond the limits of the State, but merely seeks to prevent the aiding or assisting another in betting or placing a bet upon a horse race to be run in this State or elsewhere; and it is the aiding of another in this State in offering in this State to bet in or out of the State on a horse race which constitutes the offense, and the language in the information with reference to making wagers in this State, which in fact occurred outside of this State, may be treated as surplusage.

**5.—Same—Case Stated—Jurisdiction of Offense.**

The offering and placing of money with the telegraph company for the purposes denounced in said Act of the Thirty-first Legislature, page 91, being wholly and entirely completed in this State, the courts of this State had jurisdiction of the offense, and the contention of extra-territorial jurisdiction because the horse racing took place in another State and that the contract of betting was finally completed in another State, is untenable.

**6.—Same—Constitutional Law—Fourteenth Amendment—Discrimination.**

The Act of the Thirty-first Legislature, page 91, which prohibits the buying and selling of pools or receiving or making bets on horse racing, etc., is not discriminatory and does not contravene the Fourteenth Amendment of the Constitution of the United States. Following Waters-Pierce Oil Co. v. State, 105 S. W. Rep., 851, and other cases.

From Grayson County.

Original proceeding in a habeas corpus asking release from arrest by virtue of a warrant based upon complaint and information filed in the County Court, charging defendant with taking and accepting a sum of money and transmitting same by telegraph to be bet on a horse race.

The opinion states the case.

*Head, Dillard, Smith & Head* and *Lively, Nelms & Adams,* and *Wm. P. Ellison,* for relator.—On question of caption of Act in not expressing the subject in the Act of the Thirty-first Legislature: Rich v. State, 38 Texas Crim. Rep., 199; Windsor v. State, 46 Texas Crim. Rep., 140; Scales v. State, 46 Texas Crim. Rep., 296, 81 S. W. Rep., 947; Woodcock v. McQueen, 11 Ind., 14; Harris v. White, 81 N. Y., 532; Ex parte Thomason, 16 Neb., 238; Davis v. State, 130 Ala., 148; 7 Am. & Eng. Ency. Law, pp. 125-6 and 136; 26 Am. & Eng. Ency. Law, 579, 580, 581; State v. Chapel, 63 Minn., 535; Pace v. Ala., 106 U. S., 583.

On question of discrimination between different corporations and individuals: Swigart v. People, 154 Ill., 284; Ullman v. Fair Ass'n, 167 Mo., 273; Com. v. Simonds, 79 Ky., 618; James v. State, 63 Md., 242; People v. Bennett, 113 Fed. Rep., 515; Shumate v. Com., 15 Gratt. (Va.), 653; 6 Am. & Eng. Ency. Law, 2d ed., pp. 77, 78; Gulf, C. & S. F. Ry. Co. v. Ellis, 165 U. S., 150.

Where the Act is manifestly unconstitutional the entire Act should be declared unconstitutional: State v. Walsh, 37 S. W. Rep., 1112; State v. Thomas, 39 S. W. Rep., 481.

*John A. Mobley,* Assistant Attorney-General, for the State.—Cited cases in opinion; his brief being adopted as the opinion of the court.

RAMSEY, JUDGE.—On the 23d day of February of this year an original application was filed in this court for writ of habeas corpus. Our Presiding Judge made on same the following indorsement: "Clerk will file; case set for February 23, 1910; all necessary papers will be issued. Bail fixed at $500. Bond to be taken by sheriff of Grayson County for applicant's appearance before Court of Criminal Appeals." The record shows that on February 1, 1910, information was filed against appellant in the County Court of Grayson County, charging in substance: "First, that said Jack Walsh did then and there (on February 1, 1910, in Grayson County), take and accept the sum of ten dollars from Y. R. Allen, and agreed to and did transmit the same by the Western Union Telegraph Company, the same being a telegraph company, to one R. L. Allison, at Tulsa, in the State of Oklahoma, there to be bet and offered to bet, and did bet the same with the said Allison on a horse race to be run at Juarez, in the Republic of Mexico, on said day, wherein a horse named 'Knight Deck' was entered, and offered to bet and did bet and wager said ten dollars against a similar sum of money with the said Allison that the said horse named 'Knight Deck' would win said race.

"Second, that the said Jack Walsh did then and there (on February 1, 1910, in Grayson County), take and accept the sum of ten dollars from Y. R. Allen and agreed to and did transmit the same by the Western Union Telegraph Company, the same being a telegraph company, to one R. L. Allison, at Tulsa, in the State of Oklahoma, there

to be bet and offered to be bet, and did bet the same with the said Allison on a horse race to be run at Juarez, in the Republic of Mexico, on said day, wherein a horse named 'Knight Deck' was entered, and offered to bet and did bet and wager said ten dollars against a similar sum of money with the said Allison that the said horse named 'Knight Deck' would win the race, against the peace," etc. The application for writ of habeas corpus is based on the proposition that applicant's arrest and detention under this charge is in contravention of law for that in effect the law under which the offense was charged was invalid and unconstitutional. The Act in question, together with the caption thereof, is as follows:

"An Act to prohibit the buying and selling of pools or receiving or making bets on horse racing; to prohibit the leasing of premises for pool rooms, and to provide a penalty for its violation and to repeal the Act approved May 2, 1905, and published and known as Chapter CLXV .of the·laws of the Regular Session of the Twenty-ninth Legislature entitled 'An Act to Amend Sections 1, 2, and 3 and adding thereto Sections 4 and 5 of Chapter L of the General Laws of Texas passed at the Regular Session of the Twenty-eighth Legislature entitled "An Act to prohibit the buying and selling of pools, or receiving or making bets on horse racing; to prohibit leasing premises for pool rooms; and to provide a penalty for its violation;" prohibiting horse racing and betting on horse racing on Sunday,' and providing a conviction may be had upon the unsupported evidence of an accomplice or participant, and exempting such witness from prosecution.

"Be it enacted by the Legislature of the State of Texas:

"Section 1. That from and after the passage of this Act it shall be unlawful for any person, association of persons or any corporation, to at any place in this State, engage or assist in pool-selling or book-making on any horse race or by means of pool-selling or book-making, to take or accept any bet or aid any other person in betting or taking or accepting any bet upon any horse race to be run, trotted or paced in this State.

"Section 2. That it shall be unlawful for any person or association of persons or any corporation, at any place in this State by pool-selling or book-making or by means of telegraph, telephone or otherwise to aid or assist any other person in wagering, betting or placing a bet or in offering to wager, bet or place a bet of anything of value on any horse race to be run, trotted or paced at any place in this State or elsewhere.

"Section 3. It shall be unlawful for the owner, agent or lessee of any property in this State to permit the same to be used as a place for selling pools or book-making or wagering or receiving or assisting any person in placing any bet of or in receiving or transmitting any offer to bet anything of value on any horse race to be run, trotted or paced at any place in this State or elsewhere.

"Section 4. That any person violating any one of the provisions of

Sections 1, 2 or 3 of this Act shall be deemed guilty of a misde-
meanor and upon conviction shall be punished by a fine of not less
than two hundred dollars, nor more than five hundred dollars, and by
imprisonment in the county jail not less than thirty days nor more
than ninety days. And any corporation holding a charter, or foreign
corporation holding a permit to do business in this State, which shall'
violate any of the provisions of Sections 1, 2 or 3 of this Act shall
thereby forfeit its charter or permit to do business in this State, as
the case may be, and in addition thereto shall be liable to the State
for a penalty of not less than two hundred nor more than five hun-
dred dollars, and the person or persons acting for said corporation in
the violation of any of the provisions of either of said Sections, shall ·
upon conviction be punished by a fine of not less than two hundred
nor more than five hundred dollars, and by imprisonment in the
county jail for not less than thirty days nor more than ninety days.

"Section 5. If any person shall, at any place in this State, buy
pools or otherwise wager anything of value on any horse race to be
run, trotted or paced, at any place in this State or elsewhere, or shall
offer to wager, or shall offer to place any money or other thing of
value with any other person to be transmitted to any other place to
be wagered on any such horse race, he shall upon conviction be pun-
ished by a fine of not less than twenty-five dollars nor more than one
hundred dollars.

"Section 6. A conviction for the violation of any of the provisions
of this Act may be had upon the unsupported evidence of an accom-
plice or participant, and such accomplice or participant shall be ex-
empt from prosecution for any offense under this Act about which he
may be required to testify.

"Section 7. That the Act approved May 2, 1905, and published and
known as Chapter CLXV of the General Laws of the Regular Session
of the Twenty-ninth Legislature, entitled 'An Act to amend Sections
1, 2 and 3 and adding thereto Sections 4 and 5 of Chapter L of the
General Laws of Texas passed at the Regular Session of the Twenty-
eighth Legislature, entitled "An Act to prohibit the buying and selling
of pools, or receiving or making bets on horse racing; to prohibit
leasing of premises for pool rooms; and to provide a penalty for its
violation," prohibiting horse racing and betting on horse racing on
Sunday,' be and the same is hereby repealed." This contention is
based substantially on these propositions: "First, that the offer of a
bet on a horse race, the offering to place money with others to be
transmitted to be placed or offered on a horse race, are all matters
and subjects not embraced or expressed in the title to the Act of
1909, Chapter 45, Thirty-first Legislature. Second, that even if such
subjects as mentioned in foregoing proposition are to be considered
as germane to the subject expressed in the title, yet the proper con-
struction of the Act limits its provisions to acts wholly committed
within this State, and such provisions do not include or extend to

interstate transactions. Third, that the Act is discriminatory in character, and seems to impose a greater penalty on one party to a joint transaction than on the other, or otherwise discriminates between parties involved in the same transaction, contrary to the provisions of the fourteenth amendment to the Constitution of the United States. Fourth, that the Act is void because it fails to designate what acts constitute pool-selling or book-making. Fifth, that the Act is void because so vague and indefinite as to be incapable of intelligent interpretation. Sixth, that the entire Act should be declared unconstitutional because it is manifest that the Legislature would not have enacted the same but as an entirety, and even though some constitutional provisions may be found therein, those complained of as unconstitutional are so inseparably, connected with the others that the whole Act must fall." It is well settled in this State that the writ of habeas corpus is not available as a means of effecting the purposes of an appeal, writ of error, certiorari or supersedeas. Ex parte Scwartz, 2 Texas Crim. App., 74; Perry v. State, 41 Texas, 488; Ex parte Dickerson, 30 Texas Crim. Rep., 448. It is also well settled that the writ of habeas corpus is not available to test the sufficiency of a complaint. Ex parte Beverly, 34 Texas Crim. Rep., 644; Ex parte Cox, 53 Texas Crim. Rep., 240. Unless, therefore, it could be held that the law on which the prosecution is based is invalid, the application should be refused. On this question, after a careful examination, we have become convinced that none of the objections to the law urged are valid.

Our Assistant Attorney-General, Hon. Jno. A. Mobley, has filed in the case a brief so well supported by authorities, so conclusive in its reasoning and so thorough in treatment that we here adopt it as the opinion of the court. It is as follows:

"Relator brings writ of habeas corpus, being under arrest upon complaint and information filed in the County Court of Grayson County, charging him in substance as follows: First count: 'One Jack Walsh did then and there unlawfully by means of telegraph aid and assist Y. R. Allen in wagering, betting and placing a bet, and in offering to wager, bet and place a bet on a horse race to be run at a place beyond the limits of this State, in this: the said Jack Walsh did then and there take and accept the sum of $10 from Y. R. Allen and agreed to and did transmit the same by Western Union Telegraph Company, the same being a telegraph company, to one R. L. Allison, at Tulsa, Oklahoma, there to be bet and offered to be bet, and did bet the same with the said Allison on a horse race to be run at Juarez, in the Republic of Mexico, on said day, wherein a horse named Knight Deck was entered, and offered to bet and did bet and wager said $10 against a similar sum of money with the said Allison that the said horse named Knight Deck would win such race.' Second count: '. . . That the said Jack Walsh did then and there unlawfully make a wager and offer to place, and did place money

with the Western Union Telegraph Company, to be transmitted to one R. L. Allison, at Tulsa, in the State of Oklahoma, to be there wagered, and which was wagered with the said Allison on a horse race to be run at a place beyond the limits of this State, in this:" (here follows a recitation of the particular acts done as under the first count). The first count above is drawn under section 2, chapter 45, p. 91, of the Act of the Thirty-first Legislature; and the second count is drawn under section 5 of said Act.

Relator's first contention, as made in his brief, is that the caption of chapter 45 is insufficient to cover and include that part of the body and substance of the law enacted thereunder for the violation of which relator is being held. The caption of the Act in question, insofar as it relates to the matters here involved is as follows: "An Act to prohibit the buying and selling of pools, or receiving or making bets on horse racing; to prohibit the leasing of premises for pool rooms, to provide a penalty for its violation . . .; and providing that a conviction may be had upon the unsupported evidence of an accomplice or participant and exempting such witness from prosecution." It will be noted that the caption gives notice not alone that *betting* on horse racing is prohibited, but that "receiving or making bets on horse racing" is prohibited. The *"receiving"*—and this necessarily implies transmitting, offering, placing—and the "making," are as much expressive and suggestive words in this caption as is the word "bets." Likewise by the use of . . . "to prohibit the buying and selling of pools; to prohibit the leasing of premises for pool rooms and to provide a penalty for its violation . . ., and providing that a conviction may be had upon the unsupported evidence of an accomplice or participant and exempting such witness from prosecution," along with "receiving or making bets on horse racing," there is meant more and notice given of more, thus used in connection in the same caption, than would be meant or included in sum total by the one and by the other, if taken separately and apart. Every clause herein is explanatory of and adds to the meaning of every other clause in the caption. It is sufficient to give notice of and include in its meaning a statute in substance that "horse race gambling must go," and by the use of the terms *"making bets,"* "receiving bets," "to prohibit buying and selling of pools, to prohibit the leasing of premises for pool rooms," and the provision with reference to conviction on accomplice's testimony, all taken together, is sufficient to suggest the denunciation of acts which are in any manner in aid and furtherance of the practice of receiving bets or making bets.

Relator's brief assumes that the word "bets," as used in this caption, has only one meaning and is subject to only one construction and that it means *contracts* or *agreements*. The State insists that such construction is unwarranted by the authorities and by the context in the caption in the law. As it follows "making," and insofar

as the word "making" applies to it, I concede that it is here used with the meaning of contracts or agreements. But insofar as it follows the word "receiving," "receiving bets," it is used in the sense of the sum or thing placed or wagered. One could not receive a contract or agreement such as "betting" is defined to be when viewed in this light. Likewise from the language of section 2, "placing a bet," "offering to . . . place a bet of anything of value," conclusively shows that "bets" is used as the object of "receiving" in such sense. Webster's International Dictionary gives a definition of "bet" thus: "That which is laid, staked or pledged as between two parties, upon the event of a contract or any contingent issue; the act of giving such a pledge; a wager." A wager, which has been held almost, if not exactly, synonymous with bet is there defined to be "something deposited, laid or hazarded on the event of a contest or unsettled question; a bet; a stake; a pledge." "Bet and wager are synonymous terms and are applied both to the *contract of betting and wagering* and to the *thing* or *sum* bet or wagered." Woodcock v. Queen, 11 Ind., 14-16; Words & Phrases, vol. 1, p. 764; Am. & Eng. Ency. Law, 2d ed., vol. 4, p. 5. The provision of the Constitution which is here involved is article 3, section 35. It reads: "No bill (except appropriation bills . . .) shall contain more than one subject, which shall be expressed in its title . . ." The word "subject" here used was originally in our Constitution the word "object." The meaning of this provision of the Constitution has been a matter of frequent judicial interpretation. In Breen v. Ry. Co., 44 Texas, 302 (of opinion), the Supreme Court of this State said: "It (this provision) was intended to remedy the practice by which, through dexterous management, clauses were inserted in bills of which the titles gave no *intimation,* and thereby passing bills through the Legislature while many members were unaware of their real scope and effect. But while the purposes for which this section was incorporated into the organic law have been kept steadily in view, it has uniformly received a broad and liberal construction. And it has been often held to be a sufficient compliance with its provisions if the law has one general object which is fairly indicated by its title, though it may embrace different subjects which are connected with or appropriated for the accomplishment of this general object. If every detail necessary in accomplishing the general object to be effected by a law must be embraced in its title, one of the objects in view in this constitutional provision would be defeated, and all the advantages from having a title to a bill would be lost." In the State v. Parker, 61 Texas, 265, it is said: "This provision of the Constitution has frequently been construed by the Supreme Court. It has been held that it must be liberally construed and that 'none of the provisions of a statute should be regarded as unconstitutional when they relate, directly or indirectly, to the same subject, having a mutual connection and are not foreign to the subject expressed in the title.' "

In Ex parte Hernan, 45 Texas Crim. Rep., 343, this court says: "In the former Constitution the word 'object' was used instead of the word 'subject,' as contained in the article in question. 'Judge Bonner in Stone v. Brown, 54 Texas, 330, observes that 'it may be presumed that the convention had some reason for substituting a different word from that which had been so long in use in this connection; and that, in the light of judicial expressions, the word 'subject' may have been thus substituted as less restrictive than 'object.' In Peo. v. Lawrence, 36 Bar., 177, the Supreme Court of New York says: 'It must not be overlooked that the Constitution demands that the title of an Act shall express the *subject,* not the object, of the Act. It is the matter to which the statute relates and with which it deals, and not what it proposes to do, which is to be found in the title. It is no constitutional objection to a statute that its title is vague or unmeaning as to its *purpose,* if it be sufficiently distinct as to the matter to which it refers.' " Fahey v. State, 27 Texas Crim. App., 146. "As we understand the constitutional provision under consideration, where a preamble states the subject of legislation, any article may be placed under said preamble by the Legislature which is subsidiary to, connected with, and necessarily incidental and germane to the main subject involved." Simpkins, Judge, speaking for this court in Nichols v. State, 32 Texas Crim. Rep., 391, says: "It seems to be universally conceded that the object of the constitutional requirement, that 'an Act should express the *subject* in its title,' was to prevent the various legislation of uniting in the same bill incongruous matters, having no relation to or connection with each other, and germane to the subject of the bill as expressed in its title, operating as a surprise and fraud on the public and the Legislature itself, and facilitating the passage of bills engineered by private interests. Hence, the necessity of stating in the title in what department of human affairs it proposed to act. Still the degree of particularity with which the title of an Act should express the subject is not defined by the Constitution, and rests in the discretion of the Legislature, and when they act in the selection of a title, courts are not disposed to question its sufficiency." . . . "In Texas, where this objection has been often urged against criminal and civil acts, the doctrine has been repeatedly laid down, in accord with the general current of authority, that the provisions of a statute are to be sustained as long as they are of the same nature and come legitimately under the general subject expressed in the title." Page 404 and authorities cited. The Constitution of Missouri and the Constitution of Pennsylvania have provisions almost identical with the one above mentioned, except that in each of them it is stated, ". . . One subject, which shall be *clearly* expressed in its title." The framers of our Constitution no doubt had a reason for omitting this word "clearly" from the provisions as they adopted it. See Cooley's Const. Limitations, 7th ed., p. 203. "The generality of a title is, there-

fore, no objection to it so long as it is not made a cover to legislation incongruous in itself and which by no fair intendment can be considered as having necessary or proper connection." Id., p. 206. Railway v. Potts, 7 Ind., 681; People v. Briggs, 50 N. Y., 553. "No provision of a statute having natural connection with the subject expressed in the title and not foreign to it, is to be deemed within the constitutional inhibition." Cooley, p. 207, and authorities there cited. "An Act to incorporate a railroad company, it has been held, may authorize counties to subscribe to its stock, or otherwise aid the construction of the road." Cooley, p. 208, and authorities cited. Supervisors v. People, 25 Ill., 181; Mahomet v. Quackenbush, 117 U. S., 508. Cooley further says, same ed., p. 209: "There has been a general disposition to construe this constitutional provision liberally, rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which it has been adopted." He regards, p. 207n., as a "strict ruling," the case of the State v. Young, 47 Ind., 150, which held that provisions punishing intoxication could not be embraced in an Act entitled "to regulate the sale of intoxicating liquors."

Relator's second contention is as follows: "That even if such subjects as mentioned in the foregoing proposition are to be considered as germane to the subject expressed in the title, yet the proper construction of the Act limits its provisions to acts wholly committed within this State and such provisions do not include or extend to interstate transactions." Upon it he submits as a proposition that: "In the absence of an intention, expressed or inferred, the presumption is that the Legislature does not design a statute to operate beyond the territorial limits of its jurisdiction. To avoid such consequences general words in a statute will be restricted." The soundness of this proposition may be conceded, but its application to relator's case is not apparent. No effort in this statute is made to have it apply beyond the territorial limits of Texas. It does not attempt to prevent a horse race, or the betting on a horse race in any other jurisdiction. It merely seeks, by the language attacked, to prevent the "aiding or assisting another in betting *or placing a bet;*" and to prevent the "aiding *or assisting another in offering to* wager, *bet or place a bet* of anything of value upon a horse race to be run . . . in this State or elsewhere." The horse race may be run anywhere. The betting contract or betting agreement may be consummated anywhere. It is *aiding,* in Texas, another *in offering*—in Texas—to bet— in or out of Texas; and the *aiding*—in Texas—*to place a bet* (which bet may be accepted and therefore placed in or out of Texas) that is denounced. The act of *assisting in* the *offering* is the forbidden act under section 2 of the law and under the first count of the information. This *aiding* is condemned wholly within the State; the *act of offering,* the aiding in which offering is forbidden and here charged,

is wholly within this State. It is a finished act, conduct itself, whole and complete within the borders of Texas. Take the acts alleged. Is all the sovereign power of the State of Oklahoma sufficient to inflict punishment in that State for the acts and conduct denounced in section 2 of the Act, and charged in the first count of the information? Certainly not. It is the betting alone that is done there, and it alone can be prohibited there. Here the Legislature has sought only to prohibit the doing of those things which may be, and in this cause, are charged to have been, done wholly, entirely and completely within the borders of the State of Texas. .

These observations apply with equal force and accuracy to relator's criticisms of section 5 of the Act in question and to the second count which charges him thereunder, except insofar as such count charges him with *making wagers in Grayson* County, Texas. Under the facts as pleaded the State concedes that the wager was not made in Texas, and rejects this part as surplusage. But the *"offer to place* and the *placing* of money with the telegraph company *for a denounced purpose"* were wholly and entirely completed in this State. These are the acts denounced in section 5 and the material ones charged in the second count. It is wholly immaterial that the betting contract was finally completed or accepted in Oklahoma. It is wholly immaterial whether the race was ever in fact run. These are matters which the State concedes are beyond the jurisdiction of Texas, and beyond the power of her sovereignty to control, but she has the power, and seeks here through the proper agencies to exercise it, to forbid and prohibit the affirmative acts of offering to place money, and the placing of money with a carrying company for transmission—"to be transmitted"—to another place and there wagered on racing. Such physical affirmative acts are as surely, certainly and clearly the proper object of police control as are any acts which detrimentally affect the commerce of the State or her public morals, health or safety.

Relator attacks the Act in question as void because violative of the 14th Amendment to the Constitution of the United States, and upon this submits propositions 3 to 6 in substance (3 and 4) that it discriminates between parties to the same act and joint transactions in penalties affixed, and (5) that it prescribes one penalty for one who acts as agent for another in offering a bet, and a different one for him who employs the agent and himself makes the offer, and thus denies to some of them the equal protection of the law. The reading of the law itself is a sufficient answer to this contention. Every penalty mentioned applies to all who violate that part of the law to which they severally relate. Adultery and fornication are kindred crimes, yet the punishments vastly differ; so also the establisher of a lottery and the seller of its tickets. A similar question was before this court in Ex parte Hernan, 45 Texas Crim. Rep., 343. This court there said: "Relator's second proposition is that the Act itself, or at least section 3 of the Act, would, under the construction given it

by relator, permit the owner to use his premises for the purpose of selling pools, etc., on horse racing, but would punish him if he permitted another to so use premises owned or leased by him; and, for that reason, would exempt a certain class from the provisions of said Act, while others would be punished; and, therefore, in violation of the fourteenth amendment to the Constitution of the United States. If it be conceded that relator's statement is correct, this would not render the act unconstitutional, because all persons in the same class are amenable to the law, and there is no discrimination in the act against persons of the same class. We know of no constitutional inhibition preventing the Legislature from prescribing different penalties for different acts, or different classes of the same act." See Searcy v. State, 51 S. W., 1119; Fahey v. State, 27 Texas Crim. App., 146. The authorities cited by relator in his brief upon these propositions not only do not sustain him but negative the correctness of his position.

In the sixth proposition in the brief it is insisted that the statute is in contravention of the same provision of the fourteenth amendment and therefore void in that it fixes a different penalty upon corporations from that upon individuals in this: It provides a fine and forfeiture of charter and permit in the case of corporations and fine and imprisonment in the case of individuals. The corporation in its nature can not be imprisoned, and the only penalty other than fine which can be enforced against it, as such, is such forfeiture. The penalty applies to all corporations and does not attempt to exempt any. Our anti-trust law with similar provisions has been upheld. Waters-Pierce Oil Co. v. State, 105 S. W., 851; 106 S. W., 918; 212 U. S., 86; Palmer v. State, 212 U. S., 118. See also Western Union Tel. Co. v. Ind., 165 U. S., 304; Railway v. Boney, 117 Ind., 501; Railway Co. v. West, 139 Ind., 254. It will be noted that this objection can, in no event, apply to section 5 of the Act in question (and to the second count of the information) because for its violation no different penalties are prescribed, and to its violation the penalties named in section 4 do not apply."

For these reasons the application for writ of habeas corpus is refused and relator is remanded to the custody of the sheriff of Grayson County.

*Relator remanded to custody.*