## GEORGE H. GIDDINGS, ADM'R, v. CITY OF SAN ANTONIO.

1. CONSTITUTIONAL LAW—CONSTRUCTION OF STATUTE.—The act of Legislature, approved September 5, 1850, entitled "An act to incorporate the San Antonio and Mexican Gulf Railroad," is unconstitutional, in so far as in its 12th section it provides that the city of San Antonio, and the towns upon the line and at the terminus of the road on the Gulf, may issue bonds to aid in the construction of said railroad, because it embraces a distinct object not expressed in the title to the act.

2. SAME.—The authority sought to be given in the 12th section of said act, upon certain cities named, (to issue bonds, &c.,) is not included in the caption of said act, and, therefore, conflicts with section 24, article 5, of the Constitution, prescribing that "every law enacted by the Legislature shall embrace but one object, and that shall be expressed in its title."

3. SAME.—History and discussion of the said section 24, article 5, of the Constitution of 1845.

4. SAME.—This article of the Constitution is mandatory. While this has been regarded as the settled rule of construction, in this State, in its application the most liberal construction has been given, to make the whole law constitutional, where the part objected to as infringing this provision of the Constitution could be considered as appropriately connected with, or subsidiary to the main object of the act, as expressed in its title.

5. APPROVED.—City of San Antonio v. Gould, 34 Tex., 49, approved.

6. PLEADING.—A petition, seeking to recover on bonds and interest thereon, issued by the city of San Antonio, under the 12th section of the said act of September 5, 1850, is subject to demurrer; and the action of the court below, sustaining such demurrer and dismissing the suit, is affirmed.

APPEAL from Bexar. Tried below before the Hon. Geo. H. Noonan.

The facts are given in the opinion.

*W. B. Leigh*, and *Waelder & Upson*, for appellant, cited and discussed San Antonio v. Jones, 28 Tex., 30; San Antonio v. Lane, 32 Tex., 405; San Antonio v. Gould, 34 Tex., 49; Tadlock v. Eccles, 20 Tex., 792; Sharp v. New York, 31 Barb., 572; Coburn v. Dodd, 14 Ind., 347; O'Leary v. County of Cook,

28 Ill., 534; People *v.* Lawrence, 36 Barb., 177; De Witt *v.* San Francisco, 2 Cal., 299; Washington *v.* Page, 4 Cal., 388; Pierpont *v.* Crouch, 10 Cal., 315; Cooley's Const. Lim., 144, 146; Dillon on Mun. Corp., sec. 28; Chiles *v.* Drake, 2 Met., (Ky.,) 146; Oldham Turnpike Co. *v.* Ballard, 2 Met. (Ky.;) Mosier *v.* Hilton, 15 Barb., 657; Fletcher *v.* Oliver, 25 Ark., 289; Johnson *v.* Higgins, 3 Met., (Ky.,) 566; People *v.* Mahaney, 13 Mich., 481; Fireman's Association *v.* Lounsbury, 21 Ill., 511; Parkinson *v.* State, 14 Md., 184; Reed *v.* State, 12 Ind., 641; Blood *v.* Mercelliot, 53 Penn. St., 391; Bright *v.* McCullough, 27 Ind., 223; Robinson *v.* Bank of Darien, 18 Ga., 65; Pim *v.* Nicholson, 6 Ohio St., 176; Morrison *v.* Springer, 15 Iowa, 304; Adams *v.* Howe, 14 Mass., 347; Sharpless *v.* The Mayor, 21 Penn., 162; The People *v.* Draper, 15 N. Y., 543.

*McLeary & Wurzbach*, for appellee, discussed the authorities cited by appellant.

*King*, also for appellee.

*Peeler & Fisher*, also for appellee.

ROBERTS, CHIEF JUSTICE.—This suit was instituted in the District Court of Bexar county, by G. H. Giddings as administrator of Emma Giddings, deceased, for the recovery of the amount of a bond and interest coupons attached, issued and delivered by the city of San Antonio to the " San Antonio and Mexican Gulf Railroad," dated March 1, 1852, the principal of said bond being one thousand dollars.

The plaintiff alleges in his petition that the issuance of the bond and coupons sued upon was "authorized by a vote of the electors of the city of San Antonio, taken in accordance with the provisions of 'An act to incorporate the San Antonio and Mexican Gulf Railroad,' approved September 5, 1850."

The defendant demurred to the petition of plaintiff, upon

the ground "that the law under which said pretended claim of plaintiff accrued is unconstitutional, and therefore void and of no effect."

The only question presented for decision is, that the twelfth section of the act of incorporation, by the authority of which the bond and interest coupons were issued, provides for another and different object from that which is the main object of the act, and that such different object is not expressed in the title, and is, therefore, in violation of that part of our Constitution which says that "every law enacted by the Legislature shall embrace but one object, and that shall be expressed in the title." (Constitution of 1845.)

The main object of the law, which was enacted on the 5th of November, 1850, was to incorporate a company, and invest it with ample powers, as a corporate body to construct and operate a railroad from the city of San Antonio to some point on the Gulf of Mexico, in Texas.

The title of the act is, "An act to incorporate the San Antonio Railroad Company."

The section of the act objected to as unconstitutional is as follows:

"SECTION 12. That the mayor and aldermen of the city of San Antonio be and they are hereby authorized to subscribe to the capital stock of the said company, for said city, to an amount not to exceed fifty thousand dollars, as also such incorporated towns through which said railway may pass, inclusive of the town (if any) that may be its terminus on the Gulf, and to issue bonds bearing interest or otherwise, to pledge the faith of said city or towns to pay for the same; and the chief justices and county commissioners of the several counties through which the railway may pass shall be and they are hereby authorized to subscribe to the capital stock of said company, for their respective counties to pay the same: *Provided*, That the chief justices and county commissioners of said counties shall not make such subscription unless two thirds of the qualified electors of said county or

counties, at an election to be held for that purpose, shall vote in favor of such subscription being made; and the chief justice of any such counties may order such election to be held, and shall give notice of the time and object of such election, by causing notice thereof to be posted in each precinct in the county at least thirty days before the holding of such election; said election to be conducted in the manner regulating county elections, so far as the same may be applicable; *Provided, also,* That said mayor and aldermen of the city of San Antonio, and the towns upon the line and at the terminus of said railway on the Gulf, shall not make such subscriptions unless two thirds of the electors of said city or towns, qualified to vote for town or city officers, at an election to be held for that purpose, shall vote in favor of such subscription being made; and the mayor of said city or towns may order such an election to be held, and shall give notice by publication in a newspaper published in the city or town, for at least twenty days previous to such election being held, and said election shall be conducted in the same manner regulating the respective city or town elections, so far as the same may be applicable; *Provided, further,* That when any such subscription shall be made, and bonds thereof be issued by the mayor and aldermen of any of said towns or city, or by the chief justice and county commissioners of any of said counties, it shall be their duty respectively to provide for the perpetual payment of the interest that may from time to time become due upon the same, and for the payment of the principal thereof, by levying and collecting a tax upon the real and personal property in the city, town, or county for which said subscription shall be made and bonds issued, which tax shall not be less than ten cents nor more than fifty cents on each and every one hundred dollars taxable property in said city, town, or county, and shall be assessed, and collected and paid into the treasury of said city, town, or counties by which it is levied, in the same manner the city or county tax in such city, or town or counties is assessed and collected,

which tax shall be continued from year to year until the whole amount of the principal and interest due on said bonds shall have been fully paid and discharged; and when collected, after deducting therefrom the expenses of assessing and collecting, shall first be applied to the payment of the interest due on such bonds, and the remainder shall be applied to the payment of the principal on such bonds."

This is the fourth time this section of the law has been before this court for the adjudication of its constitutionality. In the first case, this point was not raised, and was not decided. (San Antonio v. Jones, 28 Tex., 19.)

In the second case, it was presented, and this 12th section of the act was held to be constitutional. (City of San Antonio v. Lane, 32 Tex., 405.)

In the third case, it was presented, and the 12th section of the act was held to be unconstitutional, as embracing a distinct object not expressed in the title. (The City of San Antonio v. Gould, 34 Tex., 49.)

In the opinion delivered in the last case, Justice Walker says: "The plain and literal meaning of seventeen sections of the act make it an act of incorporation, the purpose of which is to build a railroad from San Antonio to the Gulf of Mexico, with the ordinary powers, rights, and privileges incident to such a franchise.

"It will readily be seen that this section of the act (the 12th) is intended to enable the City of San Antonio and other towns and counties to become subscribers to the capital stock of the proposed San Antonio Railroad Company, directing the manner in which the stock shall be subscribed and paid.

"The 12th section of the act would properly, in itself, be styled 'An act to provide the means for building such railroad.'" (Id., 73.)

It must be held in mind that this is a special act of incorporation; that in 1850, when it was passed, there was in existence no general law of this State authorizing cities,

towns, or counties, to subscribe for stock in railroads, or other works of internal improvement; nor, up to that time, had there been any decision of our Supreme Court in favor of the power of the Legislature to confer any such authority, and which was decided, for the first time, in the case of San Antonio v. Jones, above quoted, in 1866; that this 12th section of this special act assumed to increase the corporate capacity of municipal bodies, by conferring this important authority upon cities, towns, and counties; that none of them, except the city of San Antonio, were named in the act; that it was left uncertain and undetermined what other towns and counties were to be affected by the act, that depending upon the route of the railroad, and its point of destination upon the Gulf, as the road might afterwards be laid out and built; and that, by this section of the act, a vested right would be conferred upon the company, thus incorporated, to get the benefit of this privilege granted to any city, town, or county through which they might choose to carry the road, in its route to the Gulf in Texas, if such county, town, or city should see proper to exercise such privilege. (For the last proposition, reference may be had to Smith v. County of Clark, 54 Mo., 58.)

This enumeration of the terms and resulting effects of this 12th section is made in order to present a full view of it, as a distinctive object of the act, which, had it been a separate act, might properly have been entitled "An act to authorize the city of San Antonio, and other towns and counties not therein named, to subscribe for stock in the San Antonio Railroad Company."

Mr. Cooley lays it down that the object of this provision (in the Constitution) is to prevent log-rolling legislation, to prevent surprise and fraud upon the Legislature, and to give notice to citizens interested, through the publication of the legislative proceedings, of what is being attempted to be done affecting them. (Cooley's Const. Lim., 144.)

Mr. Dillon lays it down that "this provision has been fre-

quently construed to require only the general or ultimate object to be stated in the title, and not the details by which the object is to be attained. Any provision calculated to carry the declared object into effect, is unobjectionable, although not specially indicated in the title." (1 Dillon on Mun. Corp., 28.)

These two rules, correct in themselves, must be construed together, in framing an act; so that that which is made incidental and auxiliary in carrying out the main object of the act, shall not be itself a distinctive object of legislation, relating to the rights, powers, and interests of corporate bodies and individuals, of which neither they nor their representatives in the Legislature would be given any notice whatever by the title of the act.

So far as it appears in this case, this was an ordinary railroad charter by a private, special act of the Legislature; and, from anything in its title, the citizens of San Antonio, Goliad, Victoria, Gonzales, Port Lavaca, Indianola, Velasco, or Corpus Christi, or their representatives in the Legislature, could hardly have had notice that their charters of incorporation were being enlarged by this act, with so important a power conferred, upon condition that the road should be laid off and built through one or more of them. If the railroad was laid off through any one of them, that town would have the power; otherwise, not.

The same may be said as to a half-dozen counties between San Antonio and some part of the coast on the Gulf.

The amending city and town charters, and the conferring important special powers on counties, such as building court houses, jails, and other public improvements requiring a collection of extraordinary taxes, are themselves usually distinctive objects of legislation; most usually prompted by the wishes and consent of those who are concerned. And if it should be attempted without being so prompted, then one object of this provision is to enable them and their representatives in the Legislature to have reasonable notice of it in the title of the act.

Had this power been previously conferred upon cities, incorporated towns, and counties, by a general law, or constitutional clause, as it was afterwards done in this State, there would not have been the same necessity for notice of it to have been given in the title of the act, and the twelfth section would have been unnecessary, except as securing the right to the railroad company to accept a subscription under the terms of said section, notwithstanding a subsequent change of the general law conferring the power. This is what was decided in the case of Smith *v.* County of Clark, 54 Missouri, 58. In that case there was no question raised or decided about the constitutionality of such a section in the charter in reference to the title to the act, and in the State of Missouri, there was a general law giving counties the right to subscribe for stock in railroad companies. This is, therefore, not a case in point in favor of appellant, as quoted in the brief.

This provision in the Constitution originated in, and was adopted to prevent the repetition of a most flagrant abuse of legislative power in the State of Georgia in the last century. Its history is briefly sketched in an opinion delivered in the Supreme Court of that State, as follows, to wit: " As to the objection that the act of 1841 is violative of the 17th sec. 1st art. of the Constitution of Georgia, because its title is at variance with the body of the act, I would observe that the traditionary history of this clause is, that it was inserted in the Constitution of 1798, at the instance of General James Jackson, and that its necessity was suggested by the Yazoo act. That memorable measure of the 17th of January, 1795, as is well known, was smuggled through the Legislature under the caption of an act, " for the payment of the late State troops," and a declaration in its title of the right of the State to the unappropriated territory thereof, " for the protection and support of its frontier settlements." (Mayor and Alderman of Savannah *v.* The State of Georgia, 4 Ga., 38.) This obnoxious act was repealed the next year, and the large grant of land to private individuals embraced in it declared

null and void for fraud in its enactment. This act became still more notoriously memorable by its subject-matter being litigated, and its history being developed in the report of the leading case of Fletcher v. Peck, decided by the Supreme Court of the United States in 1810. (6 Cranch, U. S., 87.)

Hence this provision limiting the legislative power, has been adopted in many if not most of the Constitutions of the different States of the Union. In some of the States it is held to be directory only; in others, mandatory. This court has held it to be mandatory. (Cannon v. Hemphill, 7 Tex., 208.)

While this has been regarded as the settled rule of construction here, in its application the most liberal construction has been given by the Supreme Court of this State, in accordance with the general current of authority, to make the whole law constitutional where the part objected to as infringing this provision of the Constitution could be considered as appropriately connected with or subsidiary to the main object of the act as expressed in the title, which may be seen by reference to a number of cases that have been decided *pro* and *con*, involving this question. (Cannon v. Hemphill, 7 Tex., 208 : Parker v. Parker, 10 Tex., 86 ; Robinson v. The State, 15 Texas, 312; Tadlock v. Eccles, 20 Tex., 792; The State v. Shadle, 41 Tex., 404; Breen v. The T. & P. R. Co., 44 Tex., 302.)

In the case of Tadlock v. Eccles, Justice Wheeler says: "For an act having one main or principal object in view, may incidentally affect, or be promotive of others, and it would be impossible so to legislate as to prevent this consequence. The intention doubtless was to prevent embracing in an act having one ostensible object, provisions having no relevancy to that object, but really designed, other and wholly different objects, and thus to conceal and disguise the real object proposed by the provisions of an act under a false or deceptive title." The same general idea, however, variantly expressed, may be found in numerous cases in the decisions

of many of the States of the Union, and in the rules of construction laid down by learned commentators.

The case of Mayor and Alderman of Savannah *v.* The State of Georgia, (4 Ga., 38,) may be referred to, as drawing the distinction clearly when this provision is applicable, and its effect when only part of the act falls under the prohibition.

It is not pretended that the question presented in this case is free from difficulty in its determination. The same question, upon the same class of claims, has twice been decided by this court: first, in favor of, and next against the constitutionality of this twelfth section of the act of incorporation—the court being composed of different members in the last case from those who decided the first case. This suit, it would seem, from the date of its commencement, was brought to take the opinion again of this court, when composed of still another set of justices; and the only question made, looks to the reversal of the last decision of the court made in it. While it is of the highest importance that the courts should be open at all times for the assertion of rights that are believed to be well founded, it would be unfortunate that it should be thought practicable, on a doubtful question, to easily procure a change of decision with every change in the members, who might, from time to time, compose the Supreme Court.

This question is, therefore, not before us as one of first impression, but stands with the weight in favor of an affirmance of the last decision of this court upon it.

The main object of the views and considerations that have been here now presented, is to show that the last decision in the case of the city of San Antonio *v.* Gould is sufficiently well grounded in law, as that it should not be readily reversed, and thereby add another to the changes of decision by this court on a question, both sides of which may be sustained with plausible reasons, as may be seen in the briefs of counsel in this case, and in the opinions and briefs of the two preceding cases.

Following the last decided case as a precedent, we decide that the twelfth section of said act of incorporation is violative of the Constitution, and that the District Court did not err in dismissing the suit to recover upon a bond and interest coupons given under its authority.

Judgment affirmed.

AFFIRMED.

[Associate Justice MOORE did not sit in this case.]