

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

August 20, 1951

Hon. J. W. Edgar
Commissioner of Education
Texas Education Agency
Austin, Texas

Opinion No. V-1195-A

Re: Reconsideration of holding
in Att'y Gen. Op. V-1195
(1951) that the Foundation
School Program Act does
not authorize revision of
the economic index of a
county during the four year
index period to give effect
to decline in economic ac-
tivity.

Dear Sir:

We have given further consideration to Opinion V-
1195 (1951) to the extent that it holds that the Foundation
School Program Act (S.B. 116, 51st Leg., R.S. 1949, ch. 334,
p. 625, codified as Article 2922-11 et seq., V.C.S.) does not
authorize adjustment of the economic index of a county during
the four year period for which indices are computed in order
to give effect to "sudden marked decline in the economic ac-
tivity."

Reconsideration was undertaken because of the very
able briefs and arguments presented from certain counties as
to the inequities which would result to school districts in coun-
ties which experience sudden decline in economic activity after
computation of the four year county economic index. It is ar-
gued that such a result was not intended by the Legislature. A
strong presentation has been made that the authors of Senate
Bill 116 and those who explained and supported the measure be-
fore the legislative committees understood and intended that a
county economic index could be adjusted during the four year
period. This has caused us to search the history of the Act
and every available evidence of what the Legislature intended
to do and what it actually did by insertion of the following para-
graph in Section 3 of Article VI of Senate Bill 116 (Art. 2922-16,
Sec. 3, V.C.S.):

"The economic index determined for each
county for the purposes of this Act shall be used

for a period of four (4) years, beginning with
the 1951-52 school year, and the State Commis-
sioner of Education, subject to the approval of
the State Board of Education, shall recompute
a new such economic index each four (4) years,
taking such information from the most recently
available official publications and reports of
agencies of the State of Texas or the Federal
Government. Provided that should there be a
sudden marked decline in the economic activity
in a county, an adjustment of the county's eco-
nomic index may be made by the State Commis-
sioner of Education, subject to the approval of
the State Board of Education."

Did the Legislature intend by the last sentence of
the above-quoted paragraph to authorize reduction of a coun-
ty's economic index due to sudden decline in economic activ-
ity after the calculation of the four year index for all counties
and during such four year period? Or, did the Legislature
intend, by the language finally used in this sentence, merely
to authorize consideration of "sudden marked decline in the
economic activity" from other sources than "the most recent-
ly available official publications and reports" of State and
Federal agencies in arriving at each four year computation?

Considering all provisions of the Act, we held in
Opinion V-1195 that the Legislature intended that the economic
index be figured at regular intervals of four years; that the
percentage of participation of all counties was to total 100% at
all times; and that adjustments because of "sudden marked
decline in the economic activity" could be made only at the
time of computing each four year economic index.

We recognize that computations and adjustments no
more often than at four year intervals may result in hardships
on counties which suffer decline in economic activity during
that period and that increase in economic activity in the same
or other counties will not be given consideration during the
fixed period. However, balancing the equities involved in this
problem is a matter for the Legislature. Col-Tex Refining Co.
v. Railroad Commission of Texas, 240 S.W.2d 747 (Tex. Sup.
1951).

Upon further study, we find that the Legislature
specifically considered a provision permitting adjustment dur-
ing the four year period and declined to adopt it. In fact, in the
final draft of the Act the conference committee struck the spe-
cific words "during any four-year index period" from the last

sentence of the paragraph heretofore quoted, and narrowed the caption of the bill to provide for revision of the economic index "at regular intervals." This was approved and adopted by both Houses.

The history of this legislation reveals that it is true that the original draft of the bill contained language authorizing adjustment of a county's economic index during the four year period. Section 3 of Article VI of Senate Bill 116, as introduced and reported by the committee, contained the following paragraph:

"The economic index determined for each county for the purposes of this Act shall be used for a period of four (4) years, and the Central Education Agency shall recompute a new such economic index each four (4) years, taking such information from the most recently available official publications and reports of agencies of the State of Texas or the federal government. Provided that should there be a sudden marked decline in the economic activity in a county during any four (4) year index period, an adjustment in the county's economic index may be made by the Central Education Agency." (Emphasis added throughout opinion.)

The Bill was amended in various respects and passed by the Senate. Senate Jour., 51st Leg., R.S. 1949, p. 256. The engrossed bill contained the above paragraph with slight revision of the last sentence thereof as follows:

" . . . Provided that should there be a sudden marked decline in the economic activity in a county during any four-year index period, an adjustment in the county's economic index may be made by the Central Education Agency."

The House passed the Bill with amendments in which the Senate refused to concur, and a conference committee was appointed. Senate Jour., 51st Leg., R.S. 1949, p. 905. The conference committee struck out the phrase "during any four-year index period" and substituted the words "the State Commissioner of Education, subject to the approval of the State Board of Education" for the words "the Central Education Agency." Its report (Senate Jour., 51st Leg., R.S. 1949, p. 1272) contains the sentence in question at page 1284:

" . . . Provided that should there be a sudden marked decline in the economic activity in a county,

Hon. J. W. Edgar, page 4    (V-1195-A)

an adjustment of the county's economic index may be made by the State Commissioner of Education, subject to the approval of the State Board of Education."

At the same time, the conference committee fixed the economic index for the 1949-50 and 1950-51 school years, listing each county and each county's percentage of the total participation in local fund assignments.  The total of the individual county indices for these years was 100%, thereby setting a pattern for future computations by the Commissioner.

Also, the conference committee changed the general wording of the caption relating to computation of economic indices to a restricted wording so as to provide for "an economic index for the several counties of the State and for revision thereof, at regular intervals."

The report of the conference committee was adopted by the Senate on May 31, 1949, by a vote of 24 yeas and 4 nays and by the House on June 1, 1949, by a vote of 110 yeas and 25 nays.  Senate Jour., 51st Leg., R.S. 1949, pp. 1272,1290; House Jour., 51st Leg., R.S. 1949, p. 3319.

Thus, the facts and circumstances existing prior to and at the time of the adoption of Senate Bill 116 and the legislative history of the Act itself leave no doubt that the Legislature intended that the economic indices computed for the several counties be used for four years, as the Act plainly provides; that adjustments for "sudden marked decline in the economic activity" be made only when new four year indices are computed; and that the sum of the indices equal 100%.

We held in Opinion V-1195 (1951) that:

"In view of the language of this proviso and that of the clause which precedes it, and in the light of the purpose the Legislature sought to accomplish by the adoption of the Act, we think that the effect of the proviso is to limit or qualify the other language of the Section so as to authorize the Commissioner to consider information with respect to 'a sudden marked decline in the economic activity in a county' from reliable sources other than 'the most recently available official publications and reports of agencies of the State of Texas or the Federal Government' in recomputing the new four year index, if the latest official publications and reports do not reflect such information."

Further consideration of the holding on this question in that opinion compels us to adhere to the position there expressed as the only view possible, in the light of the whole tenor of the Act, which gives effect to all provisions of the Act. Any other interpretation of the proviso would render nugatory clear mandates of the Legislature that the indices be used for a period of four years and that the sum of the percentages of the county indices total 100% during the entire four year period.

Some of the interested parties have favored us with briefs in which it is urged that the economic index of one or several counties may be adjusted at any time during the four year index period without adjusting the indices of the remaining counties of the State. We are not persuaded that this may be done. If the Legislature had so intended, it would not have struck from the bill the language "during any four-year index period." Elimination of these words authorizing an adjustment during the four year index period is a clear expression of an intention on the part of the Legislature not to permit revision of the indices during the four year period for which computed. The Legislature will not be presumed to have done a useless act. If it had intended to grant authority to adjust indices during the index period, it could have easily done so by adopting the proviso as written in the bill as introduced and engrossed. This it did not do. Instead, it struck the very words which it is now contended that we should construe into the proviso. This we cannot do.

In holding that the proviso as finally adopted by the Legislature merely qualifies or modifies the language preceding it "so as to authorize the Commissioner to consider information with respect to 'a sudden marked decline in the economic activity in a county' from other reliable sources other than 'the most recently available official publications and reports of agencies of the State of Texas or the Federal Government' in recomputing the new four year index, if the latest official publications and reports do not reflect such information," we were merely applying a time-honored canon of statutory construction.

In 50 Am. Jur. 258, Statutes, Sec. 269, the rule is stated:

"In construing statutes, qualifying words, phrases, and clauses are ordinarily confined to the last antecedent, or to the words and phrases immediately preceding. The last antecedent, within the meaning of this rule, has been regarded as the last word which can be made an antecedent without impairing the meaning of the sentence. This rule of statutory construction, however, is not controlling or inflexible. It may be rebutted by the circumstances.

Moreover, the rule should not be applied without reference to the meaning of the statute when read as a whole; it prevails where there is nothing in the statute as a whole, or in the subject matter or dominant purpose of the statute, requiring a different construction, and is not applicable where a further extension or inclusion is clearly required by the intent and meaning of the context, or disclosed by the entire act. . . ."

See also 24 Words and Phrases (Perm. Ed. 1940) 261; 59 C.J. 985, Statutes, Sec. 583.

Further extension of the proviso clearly is not required or justified by the intent and meaning of the context of the Act. A legislative intent to extend the proviso in question so as to modify the statutory requirement that the index shall be used for four years is neither expressed in the Act nor reasonably implied from its provisions. Clearly, an extension of the proviso so as to qualify the total percentage of participation and the total amount to be used annually in assigning the amount of participation by local school districts is unauthorized and unwarranted.

We are further supported in our view that the indices of the several counties may be changed only at four year intervals by the fact that any other interpretation would bring the proviso into conflict with the Constitution of Texas.

Section 35 of Article III of the Constitution provides:

"No bill, (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed."

The only expression in the title of Senate Bill 116 relating to the economic index is as follows:

" . . . making provision for financing the Foundation School Program, including the amount to be charged annually to the local school districts of the State, and the method by which each district shall be required to pay its proportionate part of such program, based upon financial ability of such districts; provid-

ing in connection therewith, an economic index for
the several counties of the State and for revision
thereof, at regular intervals; . . ."

There is not a word in the title of the Act expressing
a purpose to authorize revision of the index of a county at ir-
regular intervals or at any time during the four year index per-
iod. In Pickle v. Finley, 91 Tex. 484, 44 S.W. 480 (1898), opinion
by Chief Justice Gaines, it is said at page 481:

"The members of the legislature are sworn to
support the constitution, and the courts will not pre-
sume that they have intended to violate it when the
language of the law will reasonably admit of another
construction. . . ."

This rule has been uniformly recognized and followed
by the courts of this State, and we think the interpretation urged
upon us would clearly render the proviso unconstitutional. In
Gulf Ins. Co. v. James, 143 Tex. 424, 185 S.W.2d 966 (1945), the
court said at pages 970, 971:

"We recognize the well-established rule that
liberal construction will be indulged in order to
hold that the title of an Act conforms to the require-
ments of the Constitution. 39 Tex. Jur. 95. But the
provision of the Constitution requiring the title to ex-
press the subject of the Act cannot be entirely ignored.
Cannon v. Hemphill, 7 Tex. 184, 208. The rule of liber-
al construction will not be followed to the extent that it
will relieve the legislature of the necessity of disclos-
ing the real subject of the Act in the title thereof, nor
will it be extended so as to hold Acts valid, the titles of
which are deceptive or misleading as to the real contents
of the Acts.

"The purpose of Section 35 of Article III of the
Texas Constitution is to require that the bill shall
advise both the Legislature and the people of the
nature of each particular bill, such purpose being
stated in Consolidated Underwriters v. Kirby Lumber
Co., Tex. Com. App., 267 S.W. 703, 705, as follows:
'To advise the Legislature and the people of the
nature of each particular bill, so as to prevent the
insertion of obnoxious clauses which otherwise might
be ingrafted on it and become the law, and to obviate
legislation through the combination upon a composite
bill, of the votes of the proponents of different mea-
sures included in it, some of which would not pass up-
on their merits if separately considered.'

"Other authorities state the purpose of such a requirement as follows: 'The purpose of the constitutional requirement is to give notice through the title of the bill, not only to members of the legislature, but to the citizens at large, of the subject-matter of the projected law; and thereby prevent the surreptitious passage of a law upon one, subject under the guise of a title which expresses another.' Adams & Wickes v. San Angelo Water Works Co., 86 Tex. 485, 487, 25 S.W. 605, 606. 'But the title must be such as to reasonably apprise the public of the interests that are or may be affected by the statute.' Cooley, Constitutional Limitations (8th Ed.), Vol. 1, p. 300. See also Giddings v. City of San Antonio, 47 Tex. 548, 26 Am. Rep. 321.

"We are of the opinion that the language used in the title of the Act in question is misleading and that it is not sufficient to properly advise the Legislature and the public as to the subject of the Act. [Citing authorities.]

"It is significant in this connection that the bill as originally introduced contained only the matter set out in Section 1 of the Act, Vernon's Ann. Civ. St. art. 6687b, § 15, relating to the transfer of the operator's and chauffeur's license fund. The caption to the Act was entirely appropriate to cover that subject, but was not appropriate to cover a transfer of any other funds. Thereafter, some time on the last day of that session of the Legislature, the bill was amended by a free conference committee to include the seventeen additional funds, as provided for in Section 2 of the Act, Vernon's Ann. Civ. St. Art. 4385a. But no material change was made in the title to the bill when this amendment was added. This created an ideal situation whereby the members of the Legislature might be misled by the title to the Act."

Under the decision in Gulf Ins. Co. v. James, supra, we think the title of the Act is insufficient to support a construction of the proviso authorizing revision of the index of a single county at any time other than at four year intervals. We must, and have, given the Act a reasonable interpretation in harmony with the Constitution and one which gives effect to each of its provisions.

Hon. J. W. Edgar, page 9    (V-1195-A)

As heretofore pointed out, the Bill as originally introduced contained the proviso in a form that would have authorized changing indices during the index period. The caption of the Act was cast in general terms "providing for an economic index for counties" appropriate to cover the object expressed in the proviso in the body of the Bill as originally introduced. The conference committee changed the proviso, circumscribed its effect, and changed the general language of the title, fitting it to the proviso as amended. If the Legislature had thought that the proviso after amendment had the same meaning as before amendment, it could have had no purpose in amending the caption. The fact is that both the proviso and the portion of the title relating to it were amended. The purpose and effect of the amendments was to deny authority to revise the indices in any respect during the four year index period.

Opinion V-1195 is affirmed. This includes that part of the opinion which was not reconsidered here and which held that the Commissioner, with Board approval, may recall the index recently released for the ensuing four year period and recompute the index if it is determined that the prior release was premature and that a recomputation is necessary in order to give due consideration to "sudden marked decline in the economic activity" of any county before the four year index becomes final.

## SUMMARY

The Foundation School Program Act does not authorize revision of the economic index of a county after final computation of the four year economic index for all counties of the State (affirming holding in Att'y Gen. Op. V-1195). This interpretation is confirmed by the fact that the Act as originally considered by the Legislature provided for revision "during any four-year index period," but these words were stricken from the Act in conference committee and the caption of the Bill was narrowed so as to provide that revisions of the economic index were to be made "at regular intervals." This action was approved by both Houses.

The Commissioner, with Board approval, may recall the index recently released for the ensuing four year period and recompute the index if it is determined that the prior release was

premature and that a recomputation is necessary in order to give due consideration to "sudden marked decline in the economic activity" of any county before the four year index becomes final.

Yours very truly,

PRICE DANIEL
Attorney General

APPROVED:

Charles D. Mathews
First Assistant

By Everett Hutchinson
Executive Assistant

Price Daniel
Attorney General

EH:b