

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

WAGGONER CARR
ATTORNEY GENERAL

July 31, 1963

Mr. Lester E. Harrell, Jr.
Director
Texas Commission on Higher
  Education
Austin 11, Texas

Dear Mr. Harrell:

Opinion No. C- 119

Re: Various questions concerning
    the construction of House
    Bill No. 86, Article IV,
    Section 26 of the 58th Legis-
    lature.

        We quote from your letter requesting an opinion from
this office in part as follows:

        "House Bill No. 86, Article IV, Section 26,
    of the Fifty-eighth Legislature provides as fol-
    lows:

        "'None of the funds appropriated in this
    Article to the general academic teaching insti-
    tutions shall be expended for the operation or
    maintenance of compulsory physical training pro-
    grams, regardless of whether or not credits are
    granted for participation in such programs, and
    regardless of whether such participation is re-
    quired for degree programs.  It is specifically
    provided, however, that the provisions of this
    Section shall not apply to the following kinds of
    physical training or physical education programs:

        "'a.  Organized instructional classes for
    students majoring in physical education; and

        "'b.  Programs of mass calisthenics con-
    ducted with the purpose of encouraging apprecia-
    tion of the science of bodily exercise without
    apparatus or equipment, or with light hand appara-
    tus  or equipment, and developing bodily strength
    and gracefulness.

-591-

"'It is the intent of the Legislature that physical training or physical education programs of a recreational nature be financed from student fees, auxiliary enterprise funds or other non-State appropriated sources.'

"In view of the fact that the Legislature throughout the years, in creating twenty fully State-supported institutions of higher education, has vested in the governing boards of these institutions the authority to set the graduation requirements, determine courses to be offered, and enact such by-laws, rules and regulations as are necessary for the successful governance of these colleges and universities, the Texas Commission on Higher Education has directed me to ask your opinion as to the validity of this section of the general appropriations bill which restricts the statutory authority previously granted to the several governing boards of the State-supported academic institutions.

"If Section 26 of Article IV is valid, it is imperative in the administration of its provisions that there be reasonable uniformity among the twenty State-supported academic institutions in the interpretation and application of the provisions of this Section. In order to achieve this uniformity and to carry out its statutory duty of coordination, the Texas Commission on Higher Education desires to place in the hands of the administrative officials of the several institutions the answers to the following questions:

"1. What interpretation should be given the term 'mass calisthenics?' . . .

"2. Do courses such as gymnastics or tumbling which are not sports or recreational in nature but which are solely for the purpose of 'developing bodily strength and gracefulness,' as specifically mentioned in Section 26 Subsection b come within the scope of 'calisthenics?'

"3. What equipment should be classified as 'Light hand apparatus?' . . .

"4. Does the restriction on using appropriated funds to support 'mass calisthenics' apply to physical training courses which are not 'compulsory' or required?. . .

"5. In view of the specific language of Section 26 that 'physical education programs of a recreational nature be financed from student fees, auxiliary enterprise funds or other non-State appropriated sources,' are these costs to be charged under the section of the statute authorizing a student service fee or under some other section of the general fee statute? . . ."

Presently there are twenty fully State-supported institutions of higher learning in Texas. In creating these institutions the Legislature vested in each of the governing boards the powers of management and government over the affairs of their respective institutions. For example, Article 2584, Vernon's Civil Statutes, vests the government of the University of Texas in a Board of Regents. The basic powers of the Board of Regents to govern and manage the affairs of the University are provided for in Article 2585, Vernon's Civil Statutes. Article 2585 is quoted as follows:

"They shall establish the departments of a first-class university, determine the offices and professorships, appoint a president, who shall, if they think it advisable, also discharge the duties of a professor, appoint the professors and other officers, fix their respective salaries; and they shall enact such by-laws, rules and regulations as may be necessary for the successful management and government of the University; they shall have power to regulate the course of instruction and prescribe, by and with the advice of the professors, the books and authorities used in the several departments, and to confur such degrees and to grant such diplomas as are usually conferred and granted by universities." (Emphasis added).

Pursuant to the powers vested in each of the governing boards to regulate the courses of studies of those institutions under their respective jurisdictions, a comprehensive and diversified program of compulsory physical education and training has been established.

Article IV, Section 26 of House Bill 86, 58th Texas Legislature, 1963, is a rider to the general appropriation bill for the next biennium beginning September 1, 1963. The validity

of this rider is controlled by Article III, Section 35 of the Texas Constitution. Section 35 provides as follows:

"Sec. 35. No bill, (except general appropria-
tion bills, which may embrace the various subjects
and accounts, for and on account of which moneys are
appropriated) shall contain more than one subject,
which shall be expressed in its title. But if any
subject shall be embraced in an act, which shall not
be expressed in the title, such act shall be void
only as to so much thereof, as shall not be so ex-
pressed."

The evils to be avoided by this constitutional limita-
tion have been discussed in numerous cases. Typical of these
discussions is the following from Stone v. Brown, 54 Tex. 330 (1881)
at 342, in which the Supreme Court of Texas said:

"The principal object of this constitutional
provision is to advise the legislature and the
people of the nature of each particular bill, so
as to prevent the insertion of obnoxious clauses,
which otherwise might be engrafted thereupon and
become the law; and also to prevent combinations,
whereby would be concentrated the votes of the
friends of different measures, none of which could
pass singly; thus causing each bill to stand on its
own merits."

In dealing with Article III, Section 35, a rule of
liberal interpretation has always been applied. The tendency of
the decisions is to construe the constitutional provisions on this
subject liberally rather than to embarrass legislation by a con-
struction whose strictness is unnecessary to the accomplishment
of the beneficial purpose for which it was adopted. Giddings v.
San Antonio, 47 Tex. 548 (1877); Dellinger v. State, 28 S.W.2d 537
(Tex.Crim.App. 1930). But at the same time the Court has been care-
ful to point out, as was originally done by Chief Justice Hemphill
in Cannon v. Hemphill, 7 Tex. 208 (1851), that this provision cannot
be ignored and thus nullified.

With reference to general appropriation bills, the Supreme
Court of Texas has held that "the appropriating of funds to be paid
from the State Treasury is a 'subject' within the meaning of Article
III, Section 35, of our Constitution." Moore v. Sheppard, 144 Tex.
537, 192 S.W.2d 559 (1946). It is clear from the terms of the con-
stitutional provision that general appropriation bills may contain

more than one subject of this same nature, i.e., appropriations
for the various departments and accounts. The exception of general
appropriation bills from the constitutional prohibition against
bills containing more than one subject is a limited and restricted
exception.

As long as a general appropriation bill includes only
subjects of appropriating money and limiting the use thereof in
harmony with general legislation, it may relate to any number of
different "subjects and accounts." In such instances all of the
subjects are under the one general object and purpose of appro-
priating funds from the treasury. The obvious purpose of this
limited exception was to make certain that appropriations to more
than one department in the same bill would not be prohibited. In
all other respects general appropriation bills are subject to the
same prohibition as all other bills against containing more than
one subject. The result is that general legislation cannot be
embodied within a general appropriation bill. Moore v. Sheppard,
supra.

This does not mean that a general appropriation bill
may not contain general provisions and details limiting and re-
stricting the use of the funds therein appropriated, if such
provisions are necessarily connected with and incidental to the
appropriation and use of the funds and if they do not conflict
with or amount to general legislation. Conley v. Daughters of
the Republic, 106 Tex. 80, 156 S.W. 197 (1913).

> "With special regard to what incidental pro-
> visions may be included within a general appro-
> priation bill, our Texas courts have not stated a
> general rule. However, from statements as to what
> may not be included and from numerous opinions of
> the Attorney General, we believe the rule may be
> stated generally as follows: In addition to ap-
> propriating money and stipulating the amount, man-
> ner, and purpose of the various items of expenditure,
> a general appropriation bill may contain any provi-
> sions or riders which detail, limit, or restrict the
> use of the funds or otherwise insure that the money
> is spent for the required activity for which it is
> therein appropriated, if the provisions or riders
> are necessarily connected with and incidental to the
> appropriation and use of the funds, and provided
> they do not conflict with general legislation. See
> Linden v. Finley, 92 Tex. 451, 49 S.W. 578 (1899)
> and Conley v. Daughters of the Republic, supra."
> Attorney General's Opinion V-1253 (1951).

General legislation does more than appropriate money and limit its expenditure. As said by a former Attorney General in Opinion No. 2965 (1935):

". . .if the Bill does more than set aside a sum of money, provide the means of its distribution, and to whom it shall be distributed, then it is a general law. . ."

Thus, the distinction between general appropriation bills and general legislation has been recognized in this State in the simple fact that the former merely sets apart sums of money for specific objects and uses while the latter does more than merely appropriate and limit the use of funds. General legislation constitutes a separate subject and cannot be included within a general appropriation bill. Moore v. Sheppard, supra.

Appropriation bill riders which violate Section 35 of Article III have been more frequently discussed by the courts and the Attorney General than those which are properly within the scope of such bills. The majority of the riders which have been stricken are those which attempt to modify or amend a general statute. It is well settled in this State that a rider attached to a general appropriation bill cannot repeal, modify or amend an existing general law. State v. Steele, 57 Tex. 203 (1882); Linden v. Finley, 92 Tex. 451, 49 S.W. 578 (1899); Attorney General's Opinions 1745 (1917), 2787 (1929), 2965 (1935), 2970 (1935), O-445 (1939), O-1837 (1940), O-2573 (1940), O-5329 (1943), V-412 (1947), V-894 (1949), V-1253 (1951), V-1254 (1951), V-1304 (1951), WW-233 (1957), WW-573 (1959) and C-113 (1963).

Applying the above rules to the question of the validity of Article IV, Section 26 of House Bill 86, we find no basis for the rider's validity in a general appropriation bill. The intent of the Legislature as evidenced by the language of the second paragraph of Section 26b, is clearly to prevent the governing boards of the fully State-supported institutions of higher learning from expending funds for compulsory physical training or physical training courses of a recreational nature. Obviously it seeks to amend the pre-existing general law which empowers the governing boards of these institutions to regulate such courses of study. Also, it deals with a subject other than money appropriations. Further, it is our opinion that it attempts to do more than appropriate money and is therefore a subject of general legislation which cannot be enacted in a general appropriation bill. Moore v. Sheppard, supra. Attorney General's Opinion V-1253 (1951). Also, general legislation attempted in a general appropriation bill, even though it is not designed to modify or amend

an existing statute, has been held unconstitutional. Moore v. Sheppard, supra; Attorney General's Opinion O-445 (1939).

If the rider in question were valid it would have the effect of abolishing the presently existing physical education and training programs of all the fully State-supported institutions of higher learning in this State. If the Legislature has the authority to establish and abolish a program of compulsory physical education in a general appropriation bill rider it can, by the same means, prescribe and abolish any academic course of study. The very statement of the proposition demonstrates that the subject of courses of study or instruction which are to be conducted in the fully State-supported institutions of higher learning in this State is a subject of general legislation separate from and unrelated to the general appropriation of money to operate the State agencies. It is a subject which should have the full consideration, opportunity for public notice and hearings, and opportunity for amendment or rejection afforded general legislation but usually denied to subjects incorporated as riders in a general appropriation bill.

On the basis of the authorities cited and the discussion above, it is our opinion that the rider to the general appropriation bill in question is an attempt by the Legislature to enact general legislation which would have the effect of amending pre-existing law and is therefore void.

Since we have held the general appropriation bill rider in question invalid, it is not necessary that we answer Questions 1 through 4, supra.

S U M M A R Y

Article IV, Section 26 of House Bill 86, 58th Legislature, 1963, a rider to the general appropriation bill which prohibits the expenditure of funds by State supported institutions of higher learning for the operation and maintenance of compulsory physical educational programs other than organized instructional classes for students majoring in physical education and programs of mass calisthenics, is invalid, because it is an attempt by the Legislature to enact general legislation which is not the subject of a general appropriation bill. It is also void because it would have the effect of amending pre-existing laws which vest the power in the governing boards of the respective fully State-supported

institutions of higher learning to regulate courses of study, and in these respects it violates Article III, Section 35 of the Texas Constitution.

Very truly yours,

WAGGONER CARR
Attorney General

By    *I. Raymond Williams Jr.*

I. Raymond Williams, Jr.
Assistant

IRW:wb:mkh

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
J. C. Davis
Grady Chandler
J. S. Bracewell
Howard Mays

APPROVED FOR THE ATTORNEY GENERAL
BY:  Stanton Stone